475 So.2d 1375 (1985)
STATE of Louisiana
v.
Alfred RUFFIN.
No. 85-KA-179.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 1985.
*1377 John M. Mamoulides, Dist. Atty., Gerald Alonzo, George Mustakas, II, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
Anderson Council, Kenner, for defendant-appellant.
Before BOUTALL, KLIEBERT and GRISBAUM, JJ.
KLIEBERT, Judge.
On March 25, 1982, defendant Alfred Ruffin and co-defendant Calvin Cockerham were charged by bill of information with armed robbery, a violation of La. R.S. 14:64. After the defendant's motion to suppress the identification was denied, he and his co-defendant were tried before the trial judge.
At the close of the state's case, the co-defendant's motion for a directed verdict was granted by the trial judge. Ruffin, however, was found guilty as charged after putting on his defense.
On February 15, 1984, the defendant's motion for a new trial was denied and, thereafter, the trial court sentenced the defendant to serve eight years at hard labor, with credit for time served.
The defendant failed to file assignments of error in the trial court, as mandated by C.Cr.P. Article 844, but argued in its brief that the trial court committed prejudicial error by (1) allowing testimony as to an in-court identification over defense counsel's objection and (2) denying defendant's motion for a new trial.[1] In its brief, the state called attention to the illegality of the defendant's sentence and moved for its correction. We affirm the conviction, set aside the sentencing and remand for resentencing.
The facts as to the armed robbery and the defendant's arrest are as follows:
At approximately 3:00 o'clock in the afternoon on March 6, 1982, a black man and a black woman entered the Keystone Motel, located at 8825 Airline Highway in Metairie, Louisiana, and inquired about room rental rates. As the desk clerk, John Keretz, answered their inquiries, the black male pulled out a silverplated revolver and demanded money. The black female then went around the desk and, after the cash register was opened by Keretz, she grabbed most of the money from the register. Both perpetrators then fled on foot down Airline Highway. Keretz quickly summoned the motel owner and another man from the owner's quarters of the motel. The owner grabbed a gun, and, accompanied by the other man, ran out in search of the robbers.
At the same instance, Johnny Riley and Paul Kimble, employees of a brake tag center located at 8949 Airline Highway, observed a green Oldsmobile as it drove past the brake tag station and turn onto Airline Highway. Hearing the owner of the Keystone Motel yelling that he had been robbed, Kimble realized that the Oldsmobile might be connected with the robbery and quickly noted its license plate number.
Deputy Wayne Rumore was dispatched to the Keystone Motel to investigate the robbery and was given a description of the perpetrators by Keretz. Deputy Rumore also obtained a description and the license plate number of the suspect vehicle from Riley and Kimble. A registration check revealed that the vehicle was owned by Calvin Cockerham. Thereafter, Deputy Louis Theriot located the vehicle in front of Cockerham's resident at 518 Elm Street in Metairie. Deputy Rumore and Sergeant Charles Donovan proceeded to the Elm Street address. Sergeant Donovan learned *1378 from a passer-by that three men and a woman had arrived in the suspect vehicle and entered Cockerham's residence. After receiving no answer at the door, the deputies entered Cockerham's residence, but found no one within. Returning to the suspect vehicle, the deputies were approached by Alfred Ruffin and Calvin Cockerham. Upon questioning, Cockerham said that "no one had used the vehicle except me.[2]" Cockerham informed the deputies that he had been with Ruffin for the past two hours.[3] The deputies decided to transport Cockerham and Ruffin to the Keystone Motel to see if Keretz could identify either one as the gunman who robbed him. Cockerham and Ruffin were searched before being placed in separate police vehicles.[4]
Arriving at the motel, the deputies informed Keretz that they "had two suspects, one being the owner of the car." Cockerham stepped out of a patrol car and Keretz stated that he wasn't the gunman. When Ruffin stepped out of the other patrol car, wearing a baseball cap, he was immediately identified as the gunman by Keretz. The deputies then transported Ruffin and Cockerham to the brake tag station. Although Riley and Kimble could not identify either suspect as having been in the green Oldsmobile which they had earlier observed, Cockerham and Ruffin were charged with the armed robbery of Keretz.
In Assignment of Error No. 1, the defendant contends that the court committed prejudicial error in allowing testimony at the trial relative to the in-court identification of the defendant.
Prior to trial, defense counsel filed a motion to suppress Keretz's in-field identification of the defendant. At the hearing on the motion, Deputy Rumore testified as to the events leading to Ruffin's and Cockerham's arrests. On cross-examination, Rumore admitted that he could not recall the description of the suspect he received from Keretz, other than that the gunman wore a maroon and white baseball cap and held a silver plated revolver in his left hand.[5] Deputy Rumore stated that the time of Ruffin's arrest he knew the description and Ruffin's "general appearance" fit it.
At the suppression hearing, John Keretz testified that he gave Deputy Rumore the description of a black male, 22 to 25 years old, 145 pounds, wearing a yellow blazer or raincoat and a green and white baseball cap.[6] Keretz stated that he identified Ruffin from a distance of ten feet as he stepped out of the police vehicle, that Ruffin was handcuffed and wearing the clothes that he wore when he robbed him with the exception of the yellow jacket or raincoat.
Alfred Ruffin took the stand and stated that he was arrested while wearing a burgundy baseball cap with a "C" on the front. Ruffin claimed that he was a member of a ball club and that all members wore similar caps. Ruffin stated he did not own a yellow coat. He alleged Keretz identified him as the robber from a distance of forty feet *1379 before he got out of the patrol car. Ruffin admitted that he knew Cockerham, but denied riding in Cockerham's vehicle or being with Cockerham on the day of the robbery.
A minute entry dated July 26, 1982 reflects that the motion to suppress the in-field identification was granted by Judge Eason. No indication of the basis for granting the motion is given.
At the trial, Keretz identified Ruffin as the man who robbed him. Keretz stated that Ruffin was 3 or 4 feet away from him when holding the gun on him. Keretz identified the cap seized from Ruffin as the cap Ruffin was wearing at the time of the robbery. Keretz stated that Ruffin and the female accomplice were in the motel "no more than 10 minutes, at the very most," and that neither one had anything over their face.
On cross-examination, Keretz testified that he had been in the hospital for high blood pressure treatments. Keretz explained that he wore glasses for near-sightedness. In response to defense counsel's questioning, Keretz stated that he did not suffer from dizziness or blurred vision as a result of his blood pressure problem.
On re-direct, Keretz stated that he was wearing his glasses at the time of the robbery, and that he had 20/20 vision while wearing the glasses. At that point, over defense objection, Keretz then identified the defendant as the person who had robbed him at gunpoint.
Due process prohibits the conducting of an identification procedure in a manner which is unnecessarily suggestive and conducive to irreparable mistaken identification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. McLeland, 456 So.2d 633 (2nd Cir.1984). Assuming that the in-field identification was suppressed due to impermissible suggestiveness, this does not render the incourt identification inadmissible if the incourt identification is reliable and has an independent basis. State v. Dixon, 457 So.2d 854 (1st Cir.1984); State v. McLeland, supra; State v. Williams, 449 So.2d 60 (5th Cir.1984). "It is the likelihood of misidentification which creates a due process violation, not merely the suggestive identification procedure." Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Doucet, 380 So.2d 605 (La.1980); State v. Guillot, 353 So.2d 1005 (La.1977). If the prosecution is able to lay an adequate foundation independent of the suggestive events, the identification is properly admitted. State v. Moore, 432 So.2d 209 (La.1983); State v. Williams, supra.
In determining the reliability of an in-court identification, the following factors are used: (1) The opportunity to view the perpetrator at the time of the crime; (2) The degree of attention; (3) The accuracy of the prior description of the perpetrator; (4) The level of certainty demonstrated at the confrontation; and, (5) the time between the crime and the confrontation. Neil v. Biggers, supra; Manson v. Brathwaite, supra; State v. James, 464 So.2d 299 (La.1985) (writ granted). The burden is on the state to prove that the identification is reliable. State v. James, supra.
Keretz stated that the robbery took approximately ten minutes.[7] Keretz was wearing his glasses during the incident and the gunman was standing in the well-lit lobby of the motel approximately 3 to 4 feet away and directly in front of Keretz. Keretz maintained that he looked at the gunman long enough to identify him. Keretz, the gunman, and his female accomplice were the only persons in the motel lobby at the time of the robbery, during which time, Keretz was directly confronted by the gunman.
The description of the gunman given to the police by Keretz was: a black male, approximately 5'7" to 5'9" tall, weighing approximately 145 lbs., wearing a yellow rain jacket and a cap which was white with a maroon peak.
The record shows that the defendant is 5'7½" tall. At the time of his arrest, the *1380 defendant was wearing a cap which fit the description thereof as given by Keretz to the police.
At trial, Keretz unequivocally stated Ruffin was the man that robbed him. Keretz identified Cockerham as the man the police brought back to the motel with Ruffin on the day of the robbery. Keretz was certain that Cockerham was not the person who had robbed him. He was equally as certain that Ruffin was the robber. At the request of the prosecutor, Keretz left the witness stand, walked to within 3 to 4 feet of the defendant, and stated "that is the one that held the gun with his left hand." Keretz was certain that the defendant was the gunman.
The robbery took place on March 6, 1982. Keretz identified Ruffin as the gunman on the same day of the robbery, during the motion to suppress held on June 4, 1982, and again at trial on October 13, 1983.
We find, based upon the above factors, that Keretz's in-court identification of the defendant was reliable and independent from the out-of-court identification and therefore there was no substantial likelihood that the victim misidentified Ruffin as the robber.
In the next briefed assignment of error, the defendant contends the court committed prejudicial error in denying the defendant's motion for new trial.
La. C.Cr.P. Article 851 provides as follows:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
La. C.Cr.P. Article 854 further provides:
"A motion for a new trial based on ground (3) of Article 851 shall contain allegations of fact, sworn to by the defendant or his counsel, showing:
(1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discovered before or during the trial;
(2) The names of the witnesses who will testify and a concise statement of the newly discovered evidence;
(3) The facts which the witnesses or evidence will establish; and
(4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.
The newly discovered whereabouts or residence of a witness do not constitute newly discovered evidence."
On October 20, 1983, the trial judge denied, without reasons, the defendant's motion for a new trial based on newly discovered evidence.
On November 21, 1983, defense counsel filed another motion for a new trial, alleging that (1) Keretz had incorrectly identified the defendant in court and that Keretz had contradicted himself at a previous hearing; (2) the state had withheld exculpatory evidence from the defendant; and (3) the defense had discovered three witnesses who would testify as to certain facts favorable to the defendant (including the testimony of the female accomplice to the crime *1381 who would allegedly testify that the defendant was not involved in the crime) and that newly discovered witnesses and evidence was unknown to the defense at the time of trial, despite diligent efforts to discover the same, which, if disclosed at the trial of this matter, would probably have reversed the outcome in favor of the defendant.
A hearing on the second motion for a new trial commenced on January 25, 1984. None of the witnesses named in the defense counsel's written motion were called to testify at the hearing on the motion. The defense did call Detective Mike Guillory to the stand. Detective Guillory stated that on December 16, 1983, he was contacted by Cockerham, who stated that he and Earl James Blair stayed in the car used in the robbery while Eugene Blair and Mary Nicholas robbed Keretz. According to Detective Guillory, Cockerham told him Eugene Blair was the gunman. Detective Guillory testified that he showed a photo lineup to Keretz containing a picture of Nicholas whom Keretz positively identified as the female involved in the robbery. Nicholas was subsequently arrested on the charge.
Cockerham testified that Earl James Blair and his girlfriend went into the motel while he and Eugene Blair remained in Cockerham's car. Cockerham stated that Ruffin was not involved in the robbery in any way and knew nothing about the robbery. On cross-examination, Cockerham admitted that he gave conflicting testimony at trial, where he claimed he had nothing to do with the robbery and had merely picked up three friends as they ran along Airline Highway.
Defense counsel also called Rene Ducote, Cockerham's trial counsel, to the stand. Ducote testified that prior to trial, Cockerham told him he picked up three friends in his vehicle on the day of the robberytwo brothers and a femaleand that Alfred Ruffin was not one of those people.
The trial judge decided to continue the hearing as an open matter. The hearing was re-commenced in the matter on February 15, 1984. Detective Guillory reported that he had shown three separate photo lineups to Keretz containing pictures of Ruffin and the Blairs and that Keretz could not identify any one as the gunman.
On appeal, defense counsel alleges that the testimony presented at the motion for a new trial and Keretz's inability to identify Ruffin from the photo lineup provided sufficient new evidence for the trial judge to have granted the defendant a new trial.
La. C.Cr.P. Article 851 contains four generally recognized requisites for the motion for a new trial based on newly discovered evidence: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; (3) it must be material to the issues at the trial; (4) it must be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Hall, 454 So.2d 409 (4th Cir.1984); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Talbot, 408 So.2d 861 (La.1981) (on rehearing).
In State v. Prudholm, supra, the court stated:
"The application of these precepts to newly discovered evidence by the trial judge, although a question of law, is entitled to great weight, and his discretion should not be disturbed on review if a reasonable man could differ as to the propriety of the trial court's action. See, e.g., State v. Talbot, supra at 885; State v. Jackson, 253 La. 205, 217 So.2d 372 (1968); State v. Truax, 222 La. 463, 62 So.2d 643 (1952). On the other hand, the discretion vested in the trial court must be exercised in whole-hearted good faith and be guided by the statutes, not by the court's private opinion of what the statute ought to be. State v. Talbot, supra, at 885; State v. Gilmore, 332 So.2d 789 (La.1976); State v. Randolph, 275 So.2d 174 (La.1973). The trial judge's duty is not to weigh the new evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment."
*1382 Not all of Cockerham's testimony at the hearing on the new trial motion constituted newly discovered evidence. At the trial, Cockerham stated that Ruffin was not involved in the robbery and he identified James Earl Blair, Eugene Blair, and a woman whose name he did not know as the persons he picked up on Airline Highway on the day of the robbery. Thus, Cockerham's identification of the Blairs and Nicholas as participants in the robbery, and his claim that Ruffin was not involved was not anything new and had been presented at trial and was before the judge at the time he reached his verdict.
As regards Cockerham's recantation of his trial testimony by admitting that he participated in the robbery, we note the language used in State v. Prudholm, supra, wherein the court noted:
"....we adhere to our previous view that recantations are highly suspicious and, except in rare circumstances, a motion for new trial should not be granted on the basis of a recantation since that disclaimer is tantamount to admission of perjury so as to discredit the witness at a later trial." State v. Clayton, 427 So.2d 827 (La.1982).
In the instant case, Cockerham had already been acquitted on the armed robbery charge and thus faced no danger of re-arrest on the charge. When testifying as to the Blairs' whereabouts, Cockerham stated: "James Earl ... is locked up on burglary. His brother is in Columbia, Mississippi." In light of the Supreme Court's view that recantations are highly suspicious and, except in rare circumstances, motions for new trials should not be granted on the basis of recantations, we are satisfied that the trial judge did not abuse his discretion in denying the motion for a new trial. The trial judge heard the testimony at trial as well as the testimony at the hearing on the new trial motion. Therefore, he evaluated the reliability of the additional testimony and was able to assess its impact on his original decision in the case. Under the circumstances presented here, the trial judge concluded that the additional testimony would not have changed his earlier judgment. He could have granted a new trial if he had felt otherwise.
For the reasons stated, therefore, we affirm the defendant's conviction and now consider his sentence.
The defendant was convicted of armed robbery. Armed robbery is punishable by imprisonment "at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence." R.S. 14:64. When sentencing the defendant, the trial judge did not specify that the eight year term was to be served without benefit of parole, probation or suspension of sentence. When a criminal statute requires that a sentence be imposed "without benefit of parole, probation or suspension of sentence," the sentence is "illegally lenient" if it fails to specify these restrictions. See State v. Robertson, 459 So.2d 581 (5th Cir.1984).
La. C.Cr.P. Article 882 (as amended in 1984) provides as follows:
"A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.

B. A sentence may be reviewed as to its legality on the application of the defendant or of the state:
(1) In an appealable case by appeal; or
(2) In an unappealable case by writs of certiorari and prohibition." [emphasis added]
In State v. Robertson, supra, the state requested, in oral argument only, that this court correct a similarly illegally lenient sentence. In response we said:
"We are mindful of State v. Jackson, 452 So.2d 682 (La.1984), in which the Supreme Court of Louisiana stated that `...it is inappropriate for an appellate court to correct the sentence when the defendant alone seeks appellate review.' Such action by an appellate court, the Supreme Court said, would have a `chilling effect' on the exercise of the right to appeal.

*1383 Nonetheless, Art. 882 does give appellate courts the authority to correct an illegally lenient sentence `... on the application of the defendant or of the state.' (Underlining supplied.) The term `application' is not further described, but in the instant case we are not prepared to say that the prosecution has made sufficient `application'.
If the prosecution now seeks correction of the illegally lenient sentence imposed on Robertson, it must first approach the district judge. The Supreme Court in Jackson said:
`Only the prosecution can seek correction of the error, and this should be done by applying first to the trial court, subject to subsequent appellate review.'
Art. 882, too, seems to indicate that an application is necessary, particularly if the two pertinent sentences of the article are read together. Regardless, the prosecution had not made adequate application here; and while we recognize the illegally lenient sentence imposed on Robertson, we are hesitant to correct it without having formally been asked to do so."
This case is distinguishable from the Robertson case because, unlike Robertson, here the state made a formal request for correction of the illegal sentence. Therefore, under the provisions of C.Cr.P. Article 882, as amended in 1984, here the illegal sentence can be corrected "on the application of the defendant or of the state." See State v. Johnson, 473 So.2d 352 (5th Cir.1985); State v. Sepcich, 473 So.2d 380 (5th Cir.1985).
A sentence for armed robbery can only be legal if the sentence is within the statutorily required five year minimum and the ninety-nine year maximum and is imposed "without benefit of parole, probation of suspension of sentence." Since the trial judge did not put this requirement on the sentence, it is apparent his desire was to impose a sentence of something less than eight years without benefit of parole, etc. Thus, were we to correct the sentence by adding the statutorily required phrase "without benefit of parole, etc." to the eight years, as is requested by the state, we would be imposing a higher sentence than that imposed by the trial judge. For that reason, we set aside the illegal sentence and remand the case to the trial judge for resentencing.
SENTENCE SET ASIDE; CASE REMANDED FOR RESENTENCING.
BOUTALL, C.J., dissents in part.
BOUTALL, Chief Judge, dissenting in part.
I am in accord with affirming the defendant's conviction, but I dissent from that portion of the opinion which sets aside the illegal sentence and remands the matter for resentencing.
The defendant was sentenced on February 15, 1984 and as noted in the majority opinion, the sentence was illegally lenient in that the trial judge did not order that the sentences be served without benefit of suspension of sentence, probation or parole as required under R.S. 14:64. The record does not show, nor does the State contend, that the State objected to the sentence after its imposition, nor that the State has appealed the imposition of the sentence. The issue was first raised by the State in its original brief, filed prior to the defendant's late brief.
The statutory authority for review and correction of an illegal sentence is contained in Article 882 of the Code of Criminal Procedure. That article was amended by Act 587 of 1984 to read as quoted in the majority opinion. Thus, at the time of the sentencing and the taking of the appeal, the article was not yet amended to add to paragraph A the phrase "or by an appellate court on review." Under either version of Article 882, I would hold that we cannot correct this illegal sentence because the State has not properly applied for its review.
Under the version of Article 882 prior to the amendment, the principles of the State v. Jackson, 452 So.2d 682 (La.1984) controlled. That court held:
"However, when a defendant alone appeals and the record contains a patent *1384 error favorable to the defendant, the appellate court should ignore the error, unless the prosecution, having properly raised the issue in a trial court, has sought appellate review." Cite at p. 684.
By the amendment of Article 882 in 1984, the Legislature sought to clarify the authority of an appellate court to correct an illegal sentence on review. As I interpret that article the authority of the appellate court is not unlimited. Under paragraph A the appellate court's authority is limited to "on review."
Paragraph B provides for that review on the application of the defendant or of the State only under two circumstances: (1) in an appealable case by appeal; or (2) in an unappealable case by writs of certiorari and prohibition. The State has not followed either of those directives but simply requests review in brief. This is insufficient to bring the matter before us for review.
Accordingly, either under the principles of State v. Jackson, supra, or the amended version of Code of Criminal Procedure Article 882, the State has not complied with the requirements necessary for us to review the sentence. I would therefore affirm the sentence, relegating the State to pursue the issue in the trial court under paragraph A if it so desires.
NOTES
[1] Although the brief lists another assignment of error, i.e., the guilty verdict was contrary to the law and the evidence, the error was not briefed; therefore, it is deemed abandoned. Uniform RulesCourt of Appeal, Rule 2-12.4.
[2] At trial, Sergeant Donovan testified that this statement was made. Deputy Rumore testified that Cockerham said "someone had borrowed the car." Rumore's statement was in conflict with his testimony at the motion to suppress, where he alleged that Cockerham said "no one used the car."
[3] The statement was made around 4:00 p.m.; the robbery took place around 3:00 p.m.
[4] The decision to take Cockerham and Ruffin to Keystone Motel was apparently based on several factors: Ruffin fit the general description of the gunman and was wearing a maroon and white baseball cap (as the gunman was described by Keretz); Cockerham's car was seen near the scene at the time of the robbery; Ruffin and Cockerham approached the deputies together, and claimed to have been together for the past two hours. No physical evidence of the robbery i.e. gun, moneywas recovered from the suspects.
[5] Deputy Rumore did not include a physical description of the defendant in his arrest report. The physical description he received from Keretz was apparently written on a note pad and later discarded.
[6] At trial, Keretz stated that the cap worn by the perpetrator was maroon and white, and he "didn't know" why he had previously stated otherwise.
[7] Defense counsel contends the robbery took 3 to 5 minutes.