517 So.2d 374 (1987)
STATE of Louisiana
v.
Erroll L. MANUEL.
No. 87-KA-348.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1987.
John M. Mamoulides, Dist. Atty., George Mustakas, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna (Louise Korns, of counsel, Office of the Dist. Atty.), for plaintiff-appellee.
John H. Craft, Indigent Defender Bd., Gretna, for defendant-appellant.
Before KLIEBERT, WICKER, and GOTHARD, JJ.
KLIEBERT, Judge.
Erroll Manuel, defendant, was charged by bill of information, tried and convicted on November 19, 1986 by eleven of a twelve person jury of violating LSA-R.S. 14:64, armed robbery. Manuel was sentenced to 99 years at hard labor without the benefit of parole, probation or suspension of sentence. He appeals the conviction and sentence.
On appeal the following errors were assigned by Manuel:
1) The evidence was insufficient to justify the verdict;
*375 2) The court erred in denying defendant's motion for an explanation as to the state's exercise of peremptory challenges against black venue members;
3) The court erred in allowing the victim to testify as to the number of times he had been a victim of armed robbery; and,
4) The court erred in denying a mistrial following a reference during the state's closing argument to other offenses committed by defendant.
The facts of the case are as follows:
The victim, Michael Adams, is a cab driver for West Bank Cab. He responded to a call at about 4:00 o'clock A.M. to pick up a passenger at the Shell station at Claiborne Gardens and Highway 90. Upon his arrival at the Shell station, Adams saw a person waiting in a dark area motioning for him to advance and pick him up in the dark area. He refused, making the person walk to the cab which was in a well lit area to embark. While on the way to the 7-Eleven at the Huey P. Long circle, the fare's designated destination, Adams stopped at a stop sign on the darkened highway and was robbed at gunpoint of his wallet, which contained $140.00, and his cab. Only the cab has been recovered and an attempt to dust for fingerprints turned up negative. Adams, however, was able to give police a description of his assailant.
Approximately one week after the crime, Adams was asked to come to the detective bureau to look at "mug" shots of black armed-robbery suspects. While going through these two books, Adams positively identified the defendant as his assailant. This led to defendant's arrest, trial and conviction.
Now, defendant argues the state's peremptory challenge to two black venire members was an attempt to systematically exclude blacks from the jury. The United States Supreme Court reaffirmed the principle that "the state denies a black defendant equal protection of the laws when he puts him on trial before a jury from which members of his race have been excluded." Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In the Batson case the Federal Supreme Court set forth a three part test to determine whether the defendant made a prima facie showing that he was denied equal protection, i.e., as follows, 106 S.Ct. at page 1723:
"To establish such a case, [systematically excluding members of defendant's race from jury] the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the venire, raises the necessary inference of purposeful discrimination. [citations omitted]"
If the defendant makes this prima facie showing, the burden shifts to the state to provide a neutral explanation for the challenging of black jurors. The state's explanation "need not rise to the level justifying exercise of a challenge for cause." However, "the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption of his intuitive judgmentthat they would be partial to the defendant because of their shared race."
Once the state has given "an initial explanation related to the particular case to be tried," then the trial court must determine whether the defendant has established purposeful discrimination.
The standards set forth in Batson, supra, were held to apply retroactively to all cases pending on direct review or not yet final, by the United States Supreme Court in Griffith v. Kentucky, ___ U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
*376 The record reflects that the defendant and three of the twelve jury members empanelled were black. The state used peremptory challenges for eight jurors, two of whom were black. Following objection the state explained that four or five jurors, including two blacks, were excluded from the jury because of their unresponsiveness to the proceedings and not because of their racial backgrounds. The trial court found this explanation satisfactory and found no systematic exclusion of blacks from the jury. We agree.
The defendant assigns as error and argues here the insufficiency of the evidence to justify a conviction of armed robbery, and in connection therewith contends the trial court erred in permitting the victim to testify he had been the victim of an armed robbery twenty-six times.
The standard of review used by an appellate court in the evaluation of evidence is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty as charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Camp, 446 So.2d 1207 (La. 1984).
The defendant was convicted of armed robbery in violation of LSA-R.S. 14:64. To support this conviction the state must show that the defendant: (1) took (2) anything of value belonging to another (3) from the person of or in the immediate control of the other (4) by use of force or intimidation (5) while armed with a dangerous weapon. State v. Gordon, 504 So.2d 1135 (5th Cir. 1987).
The state's case was based on the testimony of the victim and only eyewitness, Adams. He testified that he received a call on his two-way radio about 4:00 A.M. to pick up a passenger at the Shell station at Claiborne Gardens and Highway 90. Upon his arrival at the station he noticed someone standing in the darkness motioning for him to advance into the darkness to pick him up. Adams preferred to and stayed in the well lit area and watched the person as he walked to his cab in the lighted area. Also, he could see him through his rear view mirror before he left the Shell station. Adams also testified he sat at the Shell station "a few minutes" to be sure he knew where the person wanted to go. Shortly thereafter, while on a dark portion of Highway 90, he had a face-to-face confrontation with this person when he was robbed at gunpoint. After the robbery Adams provided police with a description of the perpetrator and was later asked to review books of mug shots of suspects. While reviewing these pictures, the defendant was identified as the perpetrator of the crime. He was again positively identified at trial.
In determining the reliability of an in-court identification, the following facts are used: (1) The opportunity to view the perpetrator at the time of the crime; (2) The degree of attention; (3) The accuracy of the prior description of the perpetrator; (4) The level of certainty demonstrated at the confrontation; and, (5) The time between the crime and confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. James, 464 So.2d 299 (La.1985); State v. Ruffin, 475 So.2d 1375 (5th Cir.1985). The burden is on the state to prove that the identification is reliable. State v. James, supra; State v. Ruffin, supra. If the identification is reliable the testimony of the witness alone is sufficient to support a conviction. State v. Falls, 508 So.2d 1021 (5th Cir.1987).
Although defendant contends the trial judge erred in permitting the victim to testify as to the number of times he had been the victim of an armed robbery, in our view the evidence was properly admissible to show the victim's vigilance and reliability as a witness. When the victim came upon a passenger wanting to be picked up in the darkness of a parking lot at 4:00 o'clock in the morning he intentionally made the perpetrator walk to him so he could observe him in a well lit area shows his awareness of a potential robbery. As a result he was in a position and did identify the perpetrator from mug shots one week from the date of the robbery and again in person at the trial.
*377 For the reasons stated therefore we believe the evidence was sufficient to justify the verdict of guilty.
The final assignment of error regards a statement made by the assistant district attorney during his rebuttal to the defendant's closing argument. The statement was:
"Then he says, `Well, he grabbed me from behind.' This would indicate, and use your own common sense, does it sound like a first time armed robber? A first time anyone was involved with an armed robbery? He fakes a limp and tries to put a hat on maybe to throw him off, grabs the guy in the cab, puts his thumb in his Adams Apple and brings him to a dark spot. Does that sound like a guy, a first time armed robbery? No, it sounds like a guy that's been around.
Use your own good common sense."
The defense timely objected to this statement and asked for a mistrial based on LSA-C.Cr.P. Article 770. Although the prosecutor's remarks could, under a strained interpretation, be construed as a reference to some other crimes committed by the defendant the statement did not mandate a mistrial. See State v. Crumholt, 357 So.2d 526 (La.1978); State v. Wright, 447 So.2d 614 (4th Cir.1984).
Moreover, the defendant introduced into evidence two mug books of armed robbery suspects and elicited testimony, in front of the jury, that the pictures in the books were of persons arrested, but not convicted, on armed robbery charges. Additionally, while cross-examining Detective Miller of the Jefferson Parish Sheriff's office, defendant counsel discussed the procedure for updating pictures in the books and the fact that Adams' identification of the defendant was using a 1980 picture which was replaced with 1983 picture. While still on cross, defense counsel brought out that pictures are made when a person is arrested and stay in the mug book until taken out by someone, regardless of the disposition of the case. Therefore, defendant counsel produced evidence before the jury of two prior armed robbery arrests of the defendant.
We have also carefully reviewed the record for errors patent and found none.
For the reasons stated above, we affirm the conviction and sentence of the defendant.
AFFIRMED.