441 So.2d 1192 (1983)
STATE of Louisiana
v.
Joseph James HAMILTON.
No. 82-KA-1559.
Supreme Court of Louisiana.
November 28, 1983.
*1193 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Herman Lawson, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Claude R. Sledge, Sledge & Gamble, Mansfield, for defendant-appellant.
LEMMON, Justice.
This is an appeal from a conviction of first degree murder and a sentence of life imprisonment. The only disputed issue at trial was defendant's sanity at the time of the offense.[1] For the reasons that follow, we set aside the conviction, concluding that the trial judge erred in excluding the testimony of Dr. Charles Armistead, who had examined defendant as a member of the sanity commission and had stated that he was unable, on the basis of the single examination, to give a firm opinion as to defendant's sanity at the time of the crime. We hold that defendant was denied his constitutional right to present a defense when, under circumstances which established that the only disputed issue was his sanity at the time of the offense and that his indigency prevented his obtaining additional psychiatric evidence, the trial judge refused both his pretrial request for further psychiatric evaluation by Dr. Armistead and his attempt at trial to present to the jury Dr. Armistead's relevant testimony regarding his findings at the single examination approximately ten weeks after the crime.
The murder occurred on August 28, 1981, when defendant, hitchhiking through DeSoto Parish, struck a 76-year old woman on the head with a stick and took her car. By tracing the stolen car, the police apprehended defendant at his home in St. Mary Parish nine days later.
The trial court immediately appointed counsel to represent defendant. After indictment on October 27, 1981, defendant through counsel entered a plea of not guilty and not guilty by reason of insanity. On counsel's motion to appoint a sanity commission to determine defendant's mental condition at the time of the offense, the judge appointed the coroner and two psychiatrists, Dr. Armistead and Dr. Paul Ware. Each of the three doctors conducted a single examination in November, 1981.
On January 5, 1982, the judge conducted a sanity hearing, at which the reports of the coroner and of one psychiatrist were introduced.[2] The coroner's report indicated that defendant was illiterate, learning disabled and had "much below average intelligence". The coroner further concluded that defendant was "very likely [to be mentally] disturbed at the present time". Nevertheless, the coroner noted that defendant may merely be "very shrewd" and may have been attempting to convince someone that he is mentally disturbed. The doctor declined to state an opinion as to defendant's mental condition at the time of the crime, but noted that a person who is mentally disturbed at the present time might be assumed *1194 to have been mentally disturbed ten or twelve weeks earlier.
Dr. Ware in his report stated that he found no evidence of psychosis and diagnosed defendant as having an antisocial personality disorder with a slow learner intelligence. This doctor concluded that defendant was mentally competent to proceed to trial and had been sane at the time of the offense.
Dr. Armistead, the only commission member to testify at the sanity hearing, concluded that defendant was "chronically psychotic", probably with a schizophrenic illness, at the time of the examination and was incapable at the time of assisting in his defense. The doctor recommended hospitalization for further evaluation and treatment at a forensic unit, because he was unable "on the basis of the data obtained from one interview to give an opinion as to the defendant's mental condition at the time of the alleged offense". The doctor did not change his opinion when furnished with the reports of the other doctors and with defendant's detailed confession, but still maintained that further evaluation through hospital observation on a day-to-day basis was necessary for a reliable conclusion.
The trial judge then appointed an additional psychiatrist to evaluate defendant's capacity to proceed to trial. The additional expert filed a report which concluded that defendant, although "very depressed, bitter, oppositional and a suicide risk", was "not psychotic" at the time of the examination and was competent to proceed to trial. She did not express an opinion on defendant's condition at the time of the crime.
Defense counsel then moved the court to continue the trial and to allow further evaluation, noting that defendant as an indigent was compelled to rely on court-appointed doctors to meet his burden of proof on the serious issue regarding his mental condition. The trial judge found that defendant had adequate mental capacity to proceed to trial, but denied the request for further evaluation on the issue of defendant's mental condition at the time of the offense.
At trial, defense counsel called only two witnesses. The coroner testified substantially in accordance with his report. Counsel then called Dr. Armistead. The prosecutor objected on the grounds of relevancy, citing Dr. Armistead's previous statement that he was unable to form an opinion from the data obtained in one interview. The trial judge sustained the objection, and the defense rested. On rebuttal, the prosecutor called Dr. Ware, who gave very detailed testimony of his examination upon which he based his conclusion that defendant was sane at the time of the crime.
After the jury found defendant guilty of first degree murder, defense counsel again offered the testimony of Dr. Armistead during the penalty phase of the bifurcated trial. The judge again ruled that the testimony was not relevant.[3]
An accused has a constitutional right to present a defense. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920,18 L.Ed.2d 1019 (1967); La. Const. Art. I, § 16 (1974). Defendant's only viable defense was insanity, and it was defendant's burden to prove the facts supporting that defense by a preponderance of the evidence. See La.R.S. 14:14; La.C.Cr.P. Art. 652; State v. Brogdon, 426 So.2d 158 (La.1983). Nevertheless, the trial judge excluded the unquestionably relevant testimony of Dr. Armistead as to his psychiatric findings of inappropriate emotional responses, appearances of actual delusions, and active paranoia, and his conclusion that defendant, approximately ten weeks after the crime, was "chronically psychotic, probably with a schizophrenic illness".
The fact that Dr. Armistead, after concluding that defendant at the time of the examination was mentally incapable of proceeding to trial, was reluctant to state a firm opinion, on the basis of a limited one-hour examination, that defendant was mentally incompetent on the date of the crime *1195 approximately ten weeks earlier, did not justify the trial judge's excluding entirely the evidence of the examination. The exclusion was particularly prejudicial because the other psychiatrist was allowed to give detailed findings of his examination conducted on the same day and because the defendant had the burden of proving insanity. Moreover, as noted at the outset, an indigent has no other method of proving insanity than through court appointed experts, and the trial court's refusal to permit further evaluation, combined with the court's refusal to permit the expert to testify because the expert declined to state a firm opinion without further evaluation, effectively denied defendant the constitutional right to present any favorable evidence relevant to the issue.[4] The magnitude of that constitutional error requires the setting aside of the conviction.
Accordingly, the conviction and sentence are set aside, and the case is remanded for a new trial.
NOTES
[1] Defendant also complains on appeal of the trial judge's denial of the pretrial motion to suppress his inculpatory statement. Because we set aside the conviction on other grounds, we do not reach this issue.
[2] Defense counsel's motion requested a sanity commission for the purpose of determining defendant's mental condition at the time of the offense, which is an issue to be decided by the jury at trial. After the doctors submitted reports, the judge on his own motion ordered a pretrial hearing on defendant's capacity to proceed to trial, which is an issue to be decided by the court.
[3] This ruling is even more clearly wrong than the ruling in the guilt phase. See C.Cr.P. Art. 905.5(b) and (e). Nevertheless, since the jury could not agree unanimously on sentence recommendation, the court imposed a life sentence.
[4] The problem is not one of sufficiency of evidence. On the evidence which was presented, viewed in the light most favorable to the prosecution, a rational juror could have concluded that defendant had failed to prove by a preponderance of the evidence that he was insane at the time of the offense. See State v. Roy, 395 So.2d 664 (La.1981). The problem is that the trial court improperly curtailed defendant in his presentation of favorable evidence, and this jury was precluded from weighing all available and relevant evidence in the determination of his mental condition at the time of the crime.