583 So.2d 843 (1991)
STATE of Louisiana
v.
Joseph B. GERHART.
No. 91-KA-116.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 1991.
John M. Mamoulides, Dist. Atty., Andrea Price Janzen, Jo Ellen Grant, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
Bruce G. Whittaker, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for defendant-appellant.
Before KLIEBERT, C.J., and GAUDIN and GRISBAUM, JJ.
KLIEBERT, Chief Judge.
The sole issue presented by this appeal is whether the trial judge was in error in denying the motion by appellant, an indigent, for an independent physical examination of the complaining witness.
In two counts of a bill of information the District Attorney for the Parish of Jefferson charged the accused, Joseph B. Gerhart, with, from the month of October, 1987 through the month of September, 1989, violating LSA-R.S. 14:81.2 in that he, having a position of control or supervision over Misty Choate, who was born on May 15, 1985, did commit a lewd and lascivious act upon her, he being over two years older than she, by fondling her genitals and having her touch his; and further, that Gerhart did violate LSA-R.S. 14:43.4 in that he committed aggravated oral sexual battery on the child from the month of October, 1987 through September, 1989.
The motion for an independent examination was heard and denied on August 3, 1991. Trial concluded on August 22, 1990 with unanimous jury verdicts of guilty as charged on both counts. Following consideration of a pre-sentence investigation report, the appellant, on November 16, 1990, was sentenced to fifteen years at hard labor on the molestation count and twenty years at hard labor on the aggravated oral sexual battery count, the sentences to be served consecutively and with credit for time served.
A summary of the testimony presented is as follows: Stacy McCormick, a cousin of the victim, was the first substantive witness presented by the State. She testified that in the late summer of 1989 she was bathing the victim and noticed a redness in the vaginal area; whereupon, the victim stated "Joseph [purportedly appellant] touched me down there", while making a back and forth hand motion. The victim's *844 statement was reported to the child's mother.
Rebecca Chauvin, the victim's pre-school teacher stated that the victim told her "that Joseph licks her cat." When she asked the victim to repeat her statement she complied and while doing so, the victim put her fingers in her mouth, placed them on her genitals, and then returned them to her mouth. Mrs. Chauvin called in an investigator from the child protective service. The next day, the victim told Mrs. Chauvin "Joseph makes me lick his hiney."
The victim herself testified and identified appellant as the man who touched her "in the wrong place." She stated that he touched her with a knife in her "cat" which she indicated was her genital area. She claimed he put his hand on her genitals, placed his penis by her genitals, and licked her genitals. These events occurred at appellant's house on Bertucci Street. The victim denied abuse by anyone else. On cross-examination the victim added that at the time that appellant performed oral sex upon her, a second female was present.
The victim's mother, Connie Choate, testified that the victim was born on May 15, 1985 and that appellant was forty-five or forty-six years old. Ms. Choate stated that she and appellant resided together off and on for about three years. During that period of time, appellant would on occasion babysit the victim. Ms. Choate stated that on one occasion she left the victim with appellant while she went out to play bingo. When she returned, the victim told her that appellant "licked and played with" her genitals. She testified that appellant was the only Joseph known by the victim. She confirmed that while appellant lived on Bertucci Street he on occasion babysat the victim.
Dr. Helen Britten was accepted by the court as an expert in pediatric medicine and child sexual abuse. She testified that she examined the victim on November 1, 1989. She obtained from the victim a history of sexual abuse involving the appellant and observed physical trauma consistent with sexual penetration and trauma.
The defense called to the stand Ms. Alma Jean McCormick. She basically confirmed that appellant on occasion babysat for the victim and suggested that he had a good relationship with the victim.
The victim's aunt, Jean Choate, testified that to her knowledge the victim was left with appellant only once. The trial court prohibited defense counsel from asking whether the victim's mother had left the victim in the care of adults other than appellant.
Officer Valencia Stallworth testified regarding her interview of the victim. She stated that the victim told her that some acts of sexual abuse occurred in the presence of her mother. The victim also told Stallworth that she witnessed her mother perform sexual acts upon appellant.
Appellant testified that he did not babysit for the victim very often. He also stated that his relationship with the mother was "shaky." He specifically denied the allegations against him. He also told the jury that the mother stayed with other men off and on during the course of their relationship. On cross-examination, appellant admitted to a prior felony conviction for possession of percodan in 1969.
Going into more detail with respect to the testimony of the State's expert, Dr. Helen Britten, the record reflects the following concerning her examination of the victim on November 1, 1989:
"BY MRS. JANZEN;
Q All right, Dr. Britten, what did your examination of Misty Choate consist of?
A It consisted of what I routinely do when I evaluate children for sexual abuse which is take a history from whoever the accompanying adult is with the child to find out what their concerns are.
Then I spend time making the child comfortable and interviewing the child. Then following that we go into the examination room which is like a regular medical clinic and do the physical examination which consists of a regular physical examination, head, eyes, ears, nose, throat, all of that, but it *845 also includes a detailed examination of the genital area with the use of a colposcope magnifying instrument which is basically a camera that has a magnifying lens in it which is mounted on a tripod. It never enters the child, but with it we can see tiny scars that we cannot see with a naked eye, so that's part of the physical examination that's a little different from a regular physical examination, and then we take cultures for any kind of sexually transmitted disease and that's the extent of the evaluation."
Dr. Britten's conclusions were that it was very rare for injuries to the hymen site in the very back part of the thigh tissue, such as she found in the child here, to result from an accident which occurred when the child was riding a bicycle or some similar occurrence, and that "injuries back here are most indicative of sexual type of injuries." It was her conclusion that the scar tissue could have been two years old or older and that it was unlikely to have been caused by anything but penetration. Her findings were not consistent with accidental trauma.
An accused has a constitutional right to present a defense. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); La. Const. Art. 1, Sect. 16 (1974); State v. Hamilton, 441 So.2d 1192 (La. 1983). Defendant asserts that such a right must be given precedence where the medical evidence is of such importance citing State v. Hamilton, supra, and LSA-C.C.P. art. 1464.
In Hamilton, the Louisiana Supreme Court held that defendant was denied his constitutional right to present a defense in a first degree murder trial when, under circumstances which established that the only disputed issue was his sanity at the time of the offense and that his indigency prevented his obtaining additional psychiatric evidence, the trial judge refused both his pre-trial request for further psychiatric evaluation by a doctor who had examined the defendant as a member of the sanity commission and had stated that he was unable, on the basis of the single examination, to give an opinion as to the defendant's sanity at the time of the crime, and his attempt to present to the jury the doctor's relevant testimony regarding his findings at the single examination approximately ten weeks after the crime.
However, Hamilton is distinguishable from the instant case. In Hamilton the defendant sought further psychiatric evaluation by the doctor because he was unable to give an opinion as to the defendant's sanity at the time of the offense on the basis of a limited one hour examination. Here, the defendant merely sought an independent medical examination to perhaps obtain a more favorable result concerning the cause of the victim's injury to her genitals.
A review of the jurisprudence has failed to reveal any case which holds or even intimates that a denial to an accused of a medical examination in and of itself constitutes a denial of the right to present a defense. Moreover, this defendant has not been denied his right to present a defense. His counsel received Dr. Britten's report prior to trial with ample time to prepare cross-examination, which was in fact conducted in an extensive manner. No argument is made that the doctor's examination was not properly done or that her conclusions were inconsistent therewith. Not only is it not claimed that Dr. Britten's findings were erroneous, it is not even asserted that another doctor might necessarily be expected to disagree with her conclusions. Under these circumstances, we simply fail to see where the accused has been prejudiced and conclude that the assignment of error lacks merit.
Appellant's Assignment of Error No. 2 relates to any errors patent on the face of the record. We find none.
For the reasons assigned, the convictions and sentences appealed from are affirmed.
AFFIRMED.