697 So.2d 636 (1997)
STATE of Louisiana, Appellee,
v.
Richard Dean ABBOTT, Appellant.
No. 29497-KA.
Court of Appeal of Louisiana, Second Circuit.
June 18, 1997.
*637 J. Edward Patton, II, Lavalle B. Salomon, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry Jones, District Attorney, Jimmy White, Assistant District Attorney, for Appellee.
Before HIGHTOWER, BROWN and CARAWAY, JJ.
BROWN, Judge.
Defendant, Richard Dean Abbott, was indicted for the aggravated rape of his nine-year-old stepdaughter. The original indictment alleged that the rape occurred on December 4, 1993; however, an amended indictment changed the date of the crime to reflect the incident's occurrence between June 1  December 8, 1993. A jury found defendant guilty as charged and he was sentenced as statutorily mandated to life at hard labor without benefit of parole, probation or suspension. Defendant appeals, urging numerous assignments of error. For the reasons set forth below, we affirm.

Facts
On the evening of December 8, 1993, defendant's nine-year-old stepdaughter disclosed to her mother and her babysitter, Cynthia Garrett, that defendant had touched her in her privates. This revelation occurred after defendant had moved out of the family home three days earlier on December 5. Mrs. Abbott testified that she did not ask her daughter for specific details at that time but immediately left her house and went to find and confront her husband. Mrs. Abbott found defendant at the home of his best friend, Joel Clark. Mrs. Abbott told defendant that the child had told her what he had done and that she was going to the police. Mrs. Abbott did not divulge any details and defendant did not ask what he was accused of doing. Defendant had Joel Clark drive him to defendant's mother's house. According to *638 Mr. Clark, defendant acted "paranoid," accusing Clark of purposely driving slow so that the police would be able to catch them.
Too upset to drive, Mrs. Abbott was picked up from a friend's house by a West Monroe police officer and taken to the police station.[1] After Mrs. Abbott reported her daughter's allegations, she was taken home. Mrs. Abbott then drove her daughter and Mrs. Garrett to the Ouachita Cottage, a police safe house for abused children. It was there that the child was interviewed by Officer Tom Zeigler.
The interview with the child was videotaped through a two-way mirror. The child related that defendant had taken off her clothing and touched her privates and breasts with his fingers and had put his privates (penis) into her privates (vagina).
On December 10, 1993, the victim was examined by Dr. Meade O'Boyle, a pediatric specialist in sexual abuse. Dr. O'Boyle found no hymen enlargement; however, she discovered that the child's hymen was not intact, indicating that something had gone through the hymenal ring. Dr. O'Boyle also found two vaginal scars. From these findings, Dr. O'Boyle concluded that the injuries were consistent with the child's account of sexual abuse.
Defendant did not contest the findings of Dr. O'Boyle; however, he and his witnesses testified that twin boys living next door forcibly inserted a stick into the victim's vagina in the summer of 1993. The boys were the children of Mrs. Abbott's neighbors and babysitters, Cynthia and Larry Garrett.
Although the victim had not revealed the incident to either Dr. O'Boyle or the police, she testified at trial that one of the Garrett boys "poked at her privates" with a stick. She was wearing either shorts or a bathing suit at the time, and she was unable to say when this incident occurred.
At trial, Mrs. Abbott denied knowledge of the incident with the Garrett boys. Defense witnesses, however, claimed that the mother was told, but that she took no action. Mrs. Garrett likewise denied any prior knowledge of the incident.
At trial, which was held on May 4-6, 1996, more than two and one-half years after the investigation began, the victim was not able to remember some specific details of the molestation, including when it occurred. She did testify that when her mother was at work, her stepfather took off both of their clothes and touched her between her legs with his hands and his privacy. She stated that when defendant tried to put his privacy in her privacy, she told him to stop because it hurt. According to the victim, defendant told her that he would hurt her if she told anybody and he promised to buy her a computer.
The victim testified that her brothers were playing in the yard when the incident occurred. Afterwards, she put on her clothes and went outside to play. She did not tell her brothers what defendant had done, nor did she tell her mother until after defendant had moved out of the house.
The victim stated that the incident occurred on a weekend when the defendant had a day off. Although the amended indictment alleged that the crime occurred between June 1 and December 8, 1993, the state claims that the particular incident occurred on Saturday, December 4, 1993. Defendant told the investigating detective, Brent Chappell, that on December 4, he was alone with the children and that they had played outside most of the day. Defendant's friend, Joel Clark, stated that he remembered that defendant babysat the children on the Saturday after Thanksgiving 1993.
Larry Garrett, the Abbott's neighbor, testified that he noticed at some time between Thanksgiving and Christmas 1993 that the victim's two younger brothers were playing in the backyard without her. He believed that Mrs. Abbott was at work that day and that defendant was at home with the children. This was the second time that he had seen the younger boys playing without their sister, and he was concerned. Mr. Garrett stated that he went to the Abbotts' back door to look for the victim. He knocked on the door and got no answer, even though he *639 knew defendant and the victim were somewhere in the house. He quietly entered the house, looked down the hall and saw defendant laying in bed with his eyes open. Mr. Garrett was unable to see or hear the victim. Feeling uncomfortable, Mr. Garrett left the house without speaking or being seen. Later that day, after Mrs. Abbott came home from work, Mr. Garrett finally saw the victim. Within a week of this occurrence, Mr. Garrett recalled that the victim reported that defendant had molested her.
Mrs. Abbott lived with defendant off and on for approximately nine years before they separated in December 1993. According to Mrs. Abbott, defendant rarely babysat the children.[2] Mrs. Abbott was unclear concerning where she was on December 4. Her employment records showed that she took sick leave on this day to recuperate from dental surgery.
After a three day trial, the jury, in a 10 to 2 verdict, found defendant guilty as charged.[3] The trial court sentenced defendant to life imprisonment. Defendant has appealed his conviction and sentence.

Discussion

Sufficiency of the Evidence
Sexual intercourse without lawful consent is rape. La. R.S. 14:41 (A). Aggravated rape includes anal or vaginal intercourse deemed to be without lawful consent because the victim is under the age of twelve years. La. R.S. 14:42 (A)(4). Any sexual penetration, vaginal or anal, however slight, is sufficient to complete the crime. La. R.S. 14:41 (B)
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
Each element of the crime must be proven by the state beyond a reasonable doubt. For a trier of fact to find the element of vaginal or anal penetration beyond a reasonable doubt, the record must reveal some evidence of penetration, however slight. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Lewis, 577 So.2d 799 (La.App. 2d Cir.1991), writ denied, 582 So.2d 1304 (La. 1991). The victim's testimony alone is sufficient to establish penetration and the other elements of the offense. State v. Rives, 407 So.2d 1195 (La.1981); State v. Standifer, 513 So.2d 481 (La.App. 2d Cir.1987).
The victim testified that defendant inserted his privacy into her privacy "part of the way." During the victim's initial questioning by police, she revealed that defendant had put his fingers and private part into her vagina.
Dr. O'Boyle found that the victim's hymen was scarred and not intact. Both of these findings are medically consistent with the victim's account of some penetration. According to Dr. O'Boyle, the fact that the victim's hymen was not intact meant that something had gone through her hymenal ring; however, because the hymenal ring was not enlarged, Dr. O'Boyle concluded that the child's testimony was consistent with "vulva intercourse."
Dr. O'Boyle's findings and the victim's inability to remember specific details of the incident were issues for the jury to weigh. This court's authority to review questions of fact is limited to the sufficiency of the evidence evaluation mandated by Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). Based upon the record, the jury's conclusions were reasonable and we find that the evidence, viewed in the light most favorable *640 to the state, supports defendant's conviction.

Denial of Motion for Independent Medical Examination
According to defendant, the trial court's refusal to allow an independent medical examination of the victim denied him the opportunity to present a defense to counter the expert testimony of Dr. O'Boyle.
In State v. Gerhart, 583 So.2d 843 (La.App. 5th Cir.1991), the defendant was charged with molestation and aggravated sexual battery. The young victim was examined by a physician accepted by the trial court as an expert in pediatrics and child sexual abuse. The defendant filed a motion for an independent examination. This motion was denied. On appeal, the defendant alleged error in the trial court's refusal to grant his motion. The Fifth Circuit found no jurisprudential or statutory basis for the defendant's assertion that a denial of an independent medical examination in and of itself constituted a denial of defendant's right to present a defense. Id. at 845.
In the instant case, defendant has not demonstrated that he was denied the right to present a defense. Dr. O'Boyle was accepted by the trial court as an expert in pediatric medicine and child abuse without defense objection. Defendant received Dr. O'Boyle's report well in advance of trial and thoroughly cross-examined Dr. O'Boyle. It has never been argued that the medical examination was conducted improperly or that Dr. O'Boyle's findings were erroneous. In fact, Dr. O'Boyle's finding that the hymen was not enlarged was asserted by defendant as proof that a rape did not occur. Defendant could have obtained and presented expert testimony to challenge Dr. O'Boyle's conclusion concerning when and how the damage occurred without another physical examination.
Defendant has cited no authority for his proposition that the victim of a sex offense should be compelled to undergo additional medical examination or testing. As this court noted in State v. Wilson, 28,403 (La. App.2d Cir. 08/21/96), 679 So.2d 963, courts are generally reluctant to order the victims of sex crimes to submit to further examinations. Defendant has not demonstrated any prejudice in the trial court's denial of his motion for an independent medical examination of the victim.

Admissibility of Videotaped Interview
La. R.S. 15:440.4 and 15:440.5 provide for the admissibility of videotape interviews of children under the age of 15 in cases of physical and sexual abuse when certain conditions are met.
§ 440.4 Method of recording videotape; competency
A. A videotape of a child fourteen years of age or under may be offered in evidence either for or against a defendant charged with the rape or physical or sexual abuse of a child. To render such a videotape competent evidence, it must be proved:
(1) That such electronic recording was voluntarily made by the victim of the physical or sexual abuse.
(2) That no relative of the victim of the physical or sexual abuse was present in the room where the recording was made.
(3) That such recording was not made of answers to interrogatories calculated to lead the child to make any particular statement.
(4) That the recording is accurate, has not been altered, and reflects what the witness or victim said.
(5) That the taking of the child's statement was supervised by a physician, a board-certified social worker, a law enforcement officer, a licensed psychologist, or an authorized representative of the Department of Health and Human Resources.
§ 440.5 Admissibility of videotaped statements; discovery by defendant
A. The videotape of an oral statement of the child made before the proceeding begins may be admissible into evidence if:
(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;

*641 (4) The statement was not made in response to questions calculated to lead the child to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;
(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
(8) The child is available to testify.
The record reflects that the victim's videotape interview with Officer Zeigler complied with all of the statutory requirements. Defendant urges, however, that the victim's answers in the videotape interview were responses to questions calculated to lead the child into making the statement. Before the videotape was submitted, however, no contemporaneous objections were made to the particular questions asked, and, furthermore, defense counsel does not support this claim with any evidence from the record or videotape interview.
In this case, the questions complained of as leading were directed to the then nine-year-old victim. In State v. Carthan, 377 So.2d 308 (La.1979), the Louisiana Supreme Court recognized that the rule forbidding leading questions is not so rigid that it should not yield somewhat to the trial court's discretion in the examination of young witnesses. See also State v. Prestridge, supra. There is no indication in the record that the victim acquiesced to suggestive questions; in fact, there is no evidence that such questions were posed. A review of the videotape shows only that Officer Zeigler twice asked if the defendant did anything else. This is not a leading question.
Defendant also urges that the admission of the videotape interview was a denial of his right to confront and cross-examine the witness. La. R.S. 15:440.5 allows the introduction of the videotape as an exception to the hearsay rule; however, such a hearsay exception it is not coextensive with a defendant's right to confront an accuser and the protection afforded by the confrontation clause in the constitution takes on greater significance with the increased use of out-of-court statements. See State v. Murphy, 542 So.2d 1373 (La.1989). The statute in question in this case preserves an accused's right to confront and cross-examine the witness by requiring that both the child and interviewer be available to testify.
This court held in State v. Shelton, 545 So.2d 1285 (La.App. 2d Cir.1989), writ denied, 552 So.2d 377 (La.1989), that the defendant's right to question the witness was not violated where both the child and the interviewing officer testified at trial and were subject to cross-examination. In the instant case, both child and officer were available; both did in fact testify and answer questions on cross-examination.
A more difficult problem concerns the cumulative power of out-of-court statements to bolster in-court testimony, as well as to fill in memory gaps. In this case the initial complaint of the sexual assault by the child to her mother (La.C.E. art. 801(D)(1)(d)), the videotape interview of the child with Officer Zeigler, (La. R.S. 15:440.5), and the child's trial testimony combined to present a compelling picture of truth. In some circumstances the danger of unfair prejudice in receiving these out-of-court statements may outweigh their probative value. This is true where the out-of-court accusations are inherently unreliable.
Defendant argues that on the day of both out-of-court statements, the victim was upset with his removal of a television and VCR from the family home; however, this alone does not create an atmosphere such that the initial report and videotape interview are inherently unreliable. This information was presented to and evaluated by the jury. It was appropriate to allow this evidence to be presented to the jury and well within the jury's province to determine its credibility.

Motion for Mistrial
The prosecuting attorney, at the end of his closing argument, stated, "I ask that you return some type of verdict. I do not wish to put [victim] through this again." Defendant urges that this comment improperly focused *642 the jury's attention on the fact that this was defendant's second trial, the first ending in a mistrial. Defense counsel's objection was sustained and the court admonished the jury that the remark was improper.
Mistrial is a drastic measure to be granted only when the prejudice resulting from the in-court conduct deprives the defendant of any reasonable expectation of a fair trial. State v. Smith, 433 So.2d 688 (La. 1983); State v. Hopkins, 626 So.2d 820 (La. App. 2d Cir.1993). Improper or allegedly prejudicial argument requires reversal when it is probable that the jury's verdict was influenced by the remarks. State v. Deboue, 552 So.2d 355 (La.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990). Before a verdict will be set aside on the ground of improper argument, the reviewing court must be thoroughly convinced that the jury was influenced by the remarks and that the comments contributed to the verdict. State v. Baker, 28,152 (La.App.2d Cir. 05/08/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/06/96), 684 So.2d 925.
We do not find the remark in this case to be a comment indicating that there was in fact a previous trial. In any event, it was not so prejudicial as to require that the jury's verdict be set aside.

Excessiveness of Sentence
Defendant argues that the sentence imposed by the trial court, life imprisonment without benefit of parole, probation or suspension, is excessive.
La. R.S. 14:42 (C) mandates that whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant, who was convicted of one count of aggravated rape, was given the exact penalty required by law. It can not be rationally argued that the trial court did anything other than follow the clear statutory mandate.
Furthermore, the sentencing transcript reveals that the trial court articulated the factual reasons for imposing sentence. We find no circumstances that would warrant setting aside the sentence imposed. State v. Square, 433 So.2d 104 (La.1983); State v. Strange, 28,466 (La.App.2d Cir. 06/26/96), 677 So.2d 587.

Conclusion
After the trial court's order of appeal was entered, defendant moved for a new trial, urging the discovery of new evidence, La.C.Cr.P. art. 851 (3). Thus, while we affirm both defendant's conviction and sentence, we remand this matter to the trial court for a hearing on defendant's motion for new trial, reserving to him the right to appeal an adverse ruling on said motion. See State v. Vampran, 491 So.2d 1356 (La.App. 1st Cir.1986).
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED and the matter is REMANDED for a hearing on defendant's motion for new trial.
NOTES
[1] Apparently the friend had been drinking and was unable to drive Mrs. Abbott.
[2] Mrs. Abbott had five children. Three were living with her at this time; they were the victim and her two younger brothers. One of the boys was defendant's son.
[3] An earlier trial ended in a mistrial when the jury was unable to agree on a verdict.