544 So.2d 531 (1989)
STATE of Louisiana
v.
Glennile ISAAC.
No. 89-KA-40.
Court of Appeal of Louisiana, Fifth Circuit.
May 10, 1989.
*532 Randell O. Lewis, Luling, Attorney for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry J. Morel, Jr., Dist. Atty., Kurt F. Sins, Gregory C. Champagne, Asst. Dist. Attys., Hahnville, for the State.
Before BOWES, GAUDIN and DUFRESNE, JJ.
BOWES, Judge.
Defendant Glennile Isaac appeals his conviction and sentence for attempted aggravated rape.
On February 16, 1988, an eight year old boy was assaulted while riding his bicycle in a wooded area near his home in Boutte, Louisiana. The child was grabbed from behind and unsuccessfully tried to escape. The assailant forced the boy to perform fellatio on him and then stripped the child and anally raped him. Before escaping, the boy was again forced to perform oral sex and was severely beaten by the rapist. *533 Upon his escape, the child ran to his home and was taken to the hospital. Police took a statement from him that night, after which the child was released following treatment.
On the following day, the boy was brought to the St. Charles Parish Sheriff's Department, at which time a videotape interview was conducted with him by juvenile officers. Following the interview, the victim was shown photographs of possible suspects. After viewing several hundred photos, the victim identified the defendant, Glennile Isaac, as the rapist. Mr. Isaac was subsequently arrested and, following a physical lineup in which the child again identified him as the perpetrator, the defendant was indicted and subsequently tried on a violation of LSA-R.S. 14:42, Aggravated Rape. Following trial, the jury found Isaac guilty of attempted aggravated rape and the trial court sentenced him to 20 years at hard labor. Isaac appeals his conviction on the following assignments of error:
1. The court below erred in admitting the videotape of the minor victim because his statement was made in response to leading questions, a violation of the statutory safeguards governing the admissibility of the videotape of an oral statement.
2. The evidence related to the physical lineup should not have been admitted where the state failed to reveal in its opening statement that such evidence would be introduced.
3. Where it is unclear whether an eight year old understood the importance of the oath to testify truthfully, the court erred in permitting the child to testify.
4. Where it is certain that the jury rendered a compromise verdict, the court erred in failing to grant either a new trial or a post judgment motion for acquittal, especially where the court stated that the court itself had reasonable doubts.
Assignment of Error Number 1The Videotape Interview
The defendant argues that the videotape should not have been admitted because it violates the conditions enumerated in LSA-R.S. 15:440.5. That statute governs admissibility into evidence of the videotape of an oral statement made by a child fourteen years of age or under and reads as follows:
15:440.5. Admissibility
A. The videotape of an oral statement of the child made before the proceeding begins may be admissible into evidence if:
(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;
(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
(8) The child is available to testify.
B. The admission into evidence of the videotape of a child as authorized herein shall not preclude the prosecution from calling the child as a witness or taking the child's testimony outside of the courtroom as authorized in R.S. 15:283. Nothing in this Section shall be construed to prohibit the defendant's right of confrontation.
The defendant avers specifically that condition number four was violated, in that the police officers who interviewed the victim asked a number of leading questions. A transcript of the video was introduced, as well as the tape itself. A review of the transcript of the tape reveals that some of the questions asked by the interviewer *534 could be regarding as "leading questions." However, such does not render the videotape inadmissible under all the facts and circumstances of this case.
The requirement precluding leading questions is designed to help assure accuracy. State v. R.C., 494 So.2d 1350 (La.App. 2 Cir.1986).
Here defendant had access to and did review the tape prior to trial. The child victim was present in court and subject to full cross-examination. The court in State v. Feazell, 486 So.2d 327 (La.App. 3 Cir. 1986), writ denied, 491 So.2d 20 (La.1986), considered the issue of competency of a videotape of a child victim in which some leading questions had been asked (under LSA-R.S. 15:440.4 dealing with competent evidence). There the court found:
Leading questions are ordinarily prohibited when propounded to one's own witness unless such witness is unwilling or hostile. LSA-R.S. 15:277. However, it is well settled that an exception is usually made when questioning a young child. State v. Kelly, 456 So.2d 642 (La. App. 2nd Cir.1984), writ denied, 461 So.2d 312 (La.1984); State v. Kahey, 436 So.2d 475 (La.1983); State v. Bolton, 408 So.2d 250 (La.1981); State v. Francis, 337 So. 2d 487 (La.1976). Furthermore, notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court and in the absence of palpable abuse of that discretion resulting in prejudice to the accused, a finding of reversible error is not warranted. State v. Kelly, supra; State v. Francis, supra.

The court there found that the leading nature of the questions constituted harmless error "especially since the defense viewed the videotape prior to trial and cross-examined the child during trial."
We agree with the analysis of the Third Circuit and extend that reasoning to include the issue of leading questions under R.S. 15:440.5 involving admissibility of such videotapes. Therefore, because the defendant here did cross-examine the child and did view the tape prior to trial, we find that to whatever extent the questions of the interviewer were leading, the error is harmless. There was no abuse of discretion on the part of the trial court in admitting the videotape into evidence. This assignment of error is without merit.
Assignment of Error No. 2The Physical Lineup
In the State's opening remarks, the district attorney discussed the identification by the victim of the defendant's photograph at the police station. No reference was made in the opening statement to the live physical lineup in which the victim again identified the defendant. Testimony was taken relative to the identification by the child in the lineup procedure, to which testimony defendant objected as being outside the scope of the State's opening statement. The trial court overruled the objection.
Defendant argues this evidence of the physical lineup should have been ruled inadmissible under C.Cr.P. art. 766 as outside the scope of the opening statement.
LSA-C.Cr.P. art. 766 provides:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
However, LSA-C.Cr.P. art. 769 states:
Art. 769. Same; effect on introduction of evidence
Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.
If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense. [Emphasis supplied]
The importance of Article 766 is to avoid surprise to the defendant and prevent prejudice. State v. Fields, 342 So.2d 624 (La. 1977); State v. Parker, 436 So.2d 495 (La. 1983). The purpose is to put the defendant on notice of what the State intends to prove, State v. Fields, supra; and to allow *535 adequate time for preparation of the defense. State v. Parker, supra.
It is well established that the State's evidence need not be detailed in the opening statement. State v. Chapman, 410 So.2d 689 (La.1982). As the court stated in Chapman:
The statement's primary function is to set forth in general terms the nature of the charge and of the evidence sufficiently to enable the jury to follow the proceedings and to inform the accused of what acts on his part the state intends to prove.
Under LSA-C.Cr.P. art. 766, it is sufficient for the state to give a general description of the evidence it plans to introduce. State v. Edwards, 406 So.2d 1331 (La. 1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); State v. Berain, 360 So.2d 822 (La.1978).
In the instant case, as the Third Circuit found, under similar circumstances, in State v. Williams, 447 So.2d 495 (La.App. 3 Cir.1984), writs denied, 450 So.2d 969 (La. 1984), there is no indication that the evidence in question was omitted in bad faith from the prosecutor's opening statement, or that the defendant was taken by surprise in the preparation of his defense.
Here, the opening statement generally involved identification of the defendant by the victim, even though the physical lineup itself was not specifically mentioned. There is nothing in the record to suggest that the prosecutor deliberately and/or in bad faith omitted the evidence of the physical lineup, or that the defendant was taken by surprise or prejudiced in the preparation of his defense. Clearly, the State intended to prove that the child identified the defendant. Defendant was well aware of this and of the existence of the physical lineup as evidence. In fact, this evidence was even presented at the preliminary hearing. This assignment of error is without merit.
Assignment of Error Number 3Competency of the Victim
Prior to enactment of the Louisiana Code of Evidence effective January 1, 1989, the rule involving competency of a child as a witness was set out in LSA-R.S. 15:469, and is applicable to the present proceedings. The statute provides:
Understanding, and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness.
The determination of the trial judge that a child offered as a witness is competent is based not only upon the child's answers to questions testing his understanding, but is also based on the child's overall demeanor on the witness stand, and is entitled to great weight. State v. Thompson, 364 So. 2d 908 (La.1978); State v. Humphrey, 412 So.2d 507 (La.1982).
Understanding, not age, is the logical test of competency for any witness. A trial judge's judgment on the competency of a child about to be used as a witness is entitled to great weight on appeal because he had the crucial advantage of seeing and hearing the child. State v. Foy, 439 So.2d 433 (La.1983); State v. Thompson, supra; State v. Francis, 337 So.2d 487 (La.1976).
The law is well settled that a trial court is vested with great discretion in determining competency, and a ruling by a trial judge that a witness is competent to testify will not be disturbed in the absence of manifest error. State v. Arnaud, 412 So. 2d 1013 (La.1982); State v. Racca, 525 So. 2d 1229 (La.App. 1 Cir.1988).
The child testified that he knew the difference between telling the truth and telling a lie, that he learned the difference at church and at home; he stated that he made "A's" in school and, in answers to other questions, demonstrated intelligence and understanding commensurate with his age. As in State v. Foy, supra, a review of this testimony does not reveal an abuse of discretion in the ruling of the trial judge that the child possessed sufficient understanding of the trial, of the questions asked, of the difference between truth and lies, and that he had the ability to recall the *536 events about which he testified. State v. Skipper, 387 So.2d 592 (La.1980); State v. Murphy, 515 So.2d 558 (La.App. 1 Cir. 1987). This assignment of error is without merit.
Assignment of Error Number 4Motion for New Trial and Post Judgment Motion for Acquittal
The defendant contends that the verdict returned by the jury of attempted aggravated rape indisputably demonstrates that the jury merely reached a compromise verdict because it had reasonable doubts whether it was the defendant who in fact committed the rape, and that a careful review of the totality of the evidence shows that the State failed to prove his guilt beyond a reasonable doubt. In the present case, the trial judge, after expressing her concern over several points of evidence and after ordering a special hearing to discuss these, stated that she would have had a reasonable doubt. Nevertheless, she denied the motions for new trial and for a post conviction judgment of acquittal. In so doing, the judge properly used the well-known and long approved standard set by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[1]
LSA-C.Cr.P. art. 821 concerns motions for a post verdict judgment of acquittal:
Art. 821. Motion for post verdict judgment of acquittal
A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
In State v. Jacobs, 504 So.2d 817 (La. 1987), our Supreme Court, most recently, held:
An appellate court in Louisiana, reviewing the sufficiency of the evidence to support a conviction, is controlled by the standard enunciated by the Supreme Court of the United States in Jackson v. Virginia, 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979). Under that standard, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
The Due Process Clause of the Fourteenth Amendment requires the appellate court to review the evidence upon which a criminal conviction is based to determine whether it is minimally sufficient. A defendant has not been afforded due process and his conviction cannot stand unless the Jackson standard has been satisfied. See State v. Graham, 422 So.2d 123 (La.1982).
At trial, the State produced the testimony of the victim that the defendant was the person who attacked and raped him. Evidence *537 of the two previous identifications by photograph and physical lineup were also admitted. The testimony of the child was unwavering and unequivocal that defendant was the culprit. He was able to describe the oral sexual acts and, in attempting to describe the anal rape, said "He took his wheeter out and put it in my back." The State and defendant entered into certain stipulations which were presented to the jury:
(1) The Human Blood found on the ground and found on the stick (S7 and S8) is not the defendant's blood (Glennile Issac [sic]).
(2) The Human Blood on the ground and found on the stick (S7 and S8) has the same genetic markers as victims [sic] which also may be found in approximately 12 percent of the black population nation wide.
(3) No hairs or biological fluids (Blood, Seminal Fluid, or Saliva) were found on the hat in State's Exhibit No. 6.
(4) The Human Blood on the victim's shirt is not the defendant's blood (Glennile Issac [sic]).
(5) The Human Blood on the victim's shirt has the same genetic markers as the victim (which also may be found in approximately 12 percent of the black population nation wide.)
(6) Nothing found on blue jeans and underwear of victim (State Exhibit No. 3)
(7) The nail scraping from the defendant were negative for the presence of blood.
(8) Concerning the nail scrapings of the victim, no blood was found under the right-hand sample. A small amount of blood was found under the left-hand sample but the sample size was insufficient for further analysis.
(9) The anal samples taken from the victim were negative for seminal fluid and sperm.
There was thus no physical evidence directly linking defendant to the crime, except for the victim's positive identification. By the same token, the aforementioned evidence does not exclude defendant as the perpetrator. Neither was there medical evidence of actual anal penetration, and the testimony of the child does not make it entirely clear that anal penetration did occur.
The defendant produced several witnesses who stated that at the time of the crime he was at the home of his sister, sleeping or lying down. These witnesses included his girlfriend and mother, two of his sisters, and one witness not related to defendant, as well as defendant himself. It was also elicited at trial that, in the videotape, the victim initially described his attacker as having identified himself as "Elks", "being kind of tall", "kind of skinny" and "kind of bright", with long hair, a person whom the child had not seen before. The defendant attempted to prove at trial that he did not fit this physical description. Upon questioning, the child testified that the defendant's hair at the trial was the same length as it was on the day he was attacked, and the defendant was "a little bit" tall. We do not have the benefit on review of observing the child and the defendant relative to the child's testimony that he himself was dark; however, obviously, the jury did, and accorded great credibility to this child's entire testimony.
The defendant also attempted to show that another possible suspect fit the child's original description more fully, and, in particular, had the alias or nickname of "X. The trial judge was well aware of all of the evidence presented at trial and viewed "with extreme care" the testimony of the eight year old witness, which she found exclusively supported the conviction. Nonetheless, the motions for new trial and post conviction judgment of acquittal were denied by her using the proper standard (or "gauge" as she put it) for denial.
When the testimony is conflicting, the credibility of witnesses is a matter within the sound discretion of the trier of fact. Factual determinations will not be disturbed on review unless greatly contrary to the evidence. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Klar, 400 So.2d 610 (La.1981); State v. Cobbs, 350 So.2d 168 (La.1977); State v. Butler, 450 So.2d 764 (La. 5 Cir.1984).
*538 As trier of fact, the jury obviously determined that the child victim was a more credible witness than the defendant's witnesses. Having so concluded, we must determine whether the evidence of the identification meets the minimal constitutional standard for sufficiency enumerated in Jackson, supra. Under the Jackson rationale, the State was required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Long, 408 So.2d 1221 (La.1982); State v. Lee, 526 So.2d 450 (La.App. 5 Cir.1988).
As we noted above, the State introduced evidence of the victim's two prior identifications of defendant in the photographs and in the physical lineup. Additionally, there was the in-court identification. This court in State v. Manuel, 517 So.2d 374 (La.App. 5 Cir.1987) outlined the indicia of reliability of such identification:
In determining the reliability of an in-court identification, the following facts are used: (1) The opportunity to view the perpetrator at the time of the crime; (2) The degree of attention; (3) The accuracy of the prior description of the perpetrator; (4) The level of certainty demonstrated at the confrontation; and, (5) The time between the crime and confrontation. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. James, 464 So.2d 299 (La.1985); State v. Ruffin, 475 So.2d 1375 [La.] (5th Cir.1985). The burden is on the state to prove that the identification is reliable. State v. James, supra; State v. Ruffin, supra. If the identification is reliable the testimony of the witness alone is sufficient to support a conviction. State v. Falls, 508 So.2d 1021 [La.] (5th Cir.1987).
We find that the facts outlined above were sufficiently met so as to render the identification reliable, and that any possible discrepancies between the child's previous description of the perpetrator were apparently resolved by the jury in favor of the State. When the victim was shown a photograph of the person whom defendant sought to prove committed the crime, Mr. "X", the child was as certain that he had never seen that man before as he was that the defendant was his assailant. The State carried its burden of proving that the identification was reliable and met the standards for sufficiency of evidence.
As for the contention of defendant that the jury's finding of defendant as guilty of attempted aggravated rape was a compromise verdict, we note that "Guilty of attempted aggravated rape" is a responsive verdict under LSA-C.Cr.P. art. 814(A)(8). In the absence of physical evidence of penetration, the jury logically and legally could have returned such verdict. The final assignment of error is without merit.

PATENT ERROR DISCUSSION
LSA-C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignment of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review, the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. McGee, 527 So.2d 486 (La.App. 5 Cir.1988).
A review of the record reflects two patent errors, the first of which is that the trial court failed to wait 24 hours after its denial of defendant's motion for a new trial before sentencing defendant, but, instead, sentenced him at the same proceeding in which a new trial was denied. The record does not indicate that defendant waived the delay as provided for in LSA-C. Cr.P. art. 873. Such error, however, is harmless absent a showing by the defendant that he was prejudiced by such action. State v. Gamble, 504 So.2d 1100 (La.App. 5 Cir.1987); State v. Salgado, 473 So.2d 84 (La.App. 5 Cir.1985), writ denied, 478 So.2d *539 1233 (La.1985). No such showing was made in this case.
Finally, LSA-C.Cr.P. art. 880 mandates that the court, upon imposing sentence, give defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record does not indicate that credit was given to defendant. Accordingly, we must correct the sentence to allow defendant credit for time served.
For the foregoing reasons, we affirm the conviction and sentence of Isaac. The sentence is corrected, however, to give the defendant credit for time served in accordance with C.Cr.P. art. 880.
CONVICTION AFFIRMED; SENTENCE CORRECTED AND AFFIRMED.
NOTES
[1] Jackson stated in pertinent part:

... the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.