834 So.2d 1206 (2002)
STATE of Louisiana, Appellee
v.
Joe GUERRA, aka Jojo Guerra, Appellant.
No. 36,347-KA.
Court of Appeal of Louisiana, Second Circuit.
December 18, 2002.
*1208 Paula Corley Marx, Lafayette, Jesse Harold Goines, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, J. Thomas Butler, Yolanda Walker Mitchell, Assistant District Attorneys, Counsel for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
GASKINS, J.
The defendant, Joe Guerra, was tried by a jury and convicted of aggravated incest involving his three-year-old natural daughter. He was sentenced to 20 years imprisonment at hard labor. He now appeals. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
Shreveport Police Officer J.R. Courtney received the initial complaint from the victim's mother, Tammy Guerra, on May 26, 1999. Tammy related that she suspected possible molestation of the victim by the defendant while Tammy was in the hospital having a baby in February. Tammy told Officer Courtney that she noticed that the victim had been using her hands to reach between her legs and her vaginal area for an "extraordinary" amount of time. Tammy had never noticed this activity before February, and upon inspection of her daughter's vaginal area, she observed a "whole lot" of irritation.
At first, she suspected that it might be the brand of soap they were using. However, a change in soap did not help the problem. Tammy related to Officer Courtney that over the next few months she noticed that the victim's hand movements continued to the point that the victim was actually inserting her fingers into her vagina. When Tammy asked the victim why she was doing that, the victim told Tammy she was doing what her Daddy did to her.
During Officer Courtney's conversation with Tammy, he personally observed that the victim, who was playing about five feet *1209 away from him, had her hand in her panties and was moving it around in the same area and manner described by the mother. Officer Courtney also observed the victim pick up a baby doll and rub the doll's vaginal area, lick the doll's vaginal area with her tongue, massage the doll's breast area with her fingers and tell the doll to be a good girl. Tammy also observed this behavior, including that the victim touched the doll's buttocks with her finger. Officer Courtney wrote the initial offense report and referred the case to the sex crimes unit.
Sergeant Dennis Pratt of the Shreveport Police Department was assigned as the detective investigator for the instant offense. The victim's mother told him that she first became aware of the sexual activity involving the victim and the defendant when she arrived home from the hospital after having her second baby in the early part of 1999. The victim had been staying at home with the defendant. The mother told Detective Pratt that she had noticed the victim was "always playing down there between her legs" and asked the victim why she was doing that. The victim answered "that's what my Daddy does."
Based on this information, Detective Pratt arranged an interview for the victim at the Gingerbread House, a children's advocacy center in Shreveport, and later transported the victim and her mother there for the interview. The victim was interviewed on June 2, 1999, by Janice Horton Reliford, a forensic interviewer employed by The Volunteers of America. The interview was supervised by Detective Pratt from another room.
The victim told Reliford that her Daddy hurt her, and he put his two fingers in her "butt." The victim also demonstrated the act for Reliford by inserting her own fingers into a lower opening on an anatomically correct female doll. The victim never told Reliford her Daddy's name, but said that her Daddy was in jail. Apparently at the time of the complaint and interview, the defendant was in custody on an unrelated charge.
Detective Pratt also interviewed the defendant's brother-in-law, Romaldo Garcia. He related a conversation with the defendant one time in the past while they were drinking. Garcia said he often told the defendant that he needed to help Tammy around the house. The defendant responded by telling Garcia that he could not change the victim's diaper because every time he saw female genitalia, he became sexually aroused.
Detective Pratt determined from his interviews with Garcia, the mother and the defendant that the victim was not around any other people during the time of the offense because the mother and the defendant always babysat their own children. Detective Pratt could not pinpoint the time of the offense.
A medical examination by Dr. Anne Springer, an expert in the field of child abuse, confirmed damage to the child's anus consistent with abuse.
Based upon these facts, the defendant was arrested and charged with the instant offense. The jury rendered a unanimous guilty verdict of aggravated incest. The defendant's motions for post-verdict judgment of acquittal and new trial were denied.
At the sentencing proceeding, the state noted that the victim was receiving free counseling from the YWCA, and therefore the state did not request that the defendant be ordered to pay for any other treatment. The trial court then sentenced the defendant to serve 20 years at hard labor, with credit for time served, and costs to be paid through inmate banking. The defendant *1210 was also advised that he was required to register as a sex offender.
The defense timely filed motions to reconsider sentence, arguing that the defendant did not deserve the maximum sentence because he had no prior felony convictions, and had shown genuine remorse. He also argued that there was insufficient evidence to support a conviction, evidenced by the state's offer of a sentence of "time served."
In denying the defendant's motions, the trial court stated that some of the factors considered were the young age of the victim (three years old at the time of the offense), the defendant's position as a parent in the commission of the offense and the intimidation held over the victim by the defendant which was observed by the trial court. The trial court also noted that it never observed the defendant show any remorse-in fact, the defendant's glaring and outbursts (yelling) in court were noted. The trial court further stated that it was not privy to any discussions regarding lack of evidence between the state and the defense. It noted that it did not impose a financial obligation on the defendant for the treatment of the child because the child was getting treatment free of charge, and observed that the cost of such future treatment of the young child had not been assessed. The trial court stated that it believed the sentence to be reasonable and not excessive considering the totality of the circumstances surrounding the case. The defendant now appeals.

SUFFICIENCY OF EVIDENCE
The defendant argues that the state failed to meet its burden of proving that the defendant engaged in any of the prohibited acts enumerated in La. R.S. 14:78.1B. The defendant notes that the victim denied anyone touched her on direct examination, and the defendant denied any inappropriate behavior with the victim. He observes that Dr. Springer's testimony failed to establish when the victim's injuries occurred. Specifically, Dr. Springer testified that the victim's examination on June 3, 1999 revealed that the victim's injuries were sustained from penetration by an unknown foreign object. Dr. Springer also testified that the injuries (fissures) had not healed, and could have been several weeks old, or older. The defendant asserts that he was not in the household for two months prior to the victim's examination because he was incarcerated at the time. These arguments are without merit.
The state argues that it met its burden of proving that the defendant had the opportunity to commit the offenses while he was taking care of the victim when the mother was out of the home. Particularly, the state showed how the mother became aware of the acts and called police. The state also presented a videotaped interview of the victim conducted by the forensic interviewer which demonstrated that a sexual battery had occurred. Furthermore, the state presented the testimony of the mother, who stated at trial that the victim complained of hurting in the area of the anus. When the mother asked the victim if anyone had touched her in this area, the victim reported that her father had. Also, the victim reported to her mother that her daddy had hurt her.
The state presented the testimony of Dr. Ann Springer, a pediatrician, who examined the victim and found that her rectal area contained fissure type wounds that had been there for some time. Dr. Springer testified that, for the anus to show this kind of damage, there usually needs to be multiple episodes and the penetration needed to be forceful and violent. The state asserts that other testimony elicited *1211 from Dr. Springer demonstrated sexual battery.
The defendant was convicted of aggravated incest, a violation of La. R.S. 14:78.1, which provides in part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
....
La. R.S. 14:43.1 defines sexual battery. It provides in pertinent part:
A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
B. Lack of knowledge of the victim's age shall not be a defense. However, where the victim is under seventeen, normal medical treatment or normal sanitary care of an infant shall not be construed as an offense under the provisions of this Section.
The question of sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. La. C. Cr. P. art. 821; State v. Gay, 29,434 (La. App.2d Cir.6/18/97), 697 So.2d 642. The record shows that the defendant properly raised the issue of sufficiency of the evidence in the trial court in a motion for post-verdict judgment of acquittal, which was denied by the trial court.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d.Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial *1212 evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Ponsell, 33,543 (La. App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
However, this court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ponsell, supra; State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writs denied, XXXX-XXXX (La.11/15/96), 682 So.2d 760, XXXX-XXXX (La.6/26/98), 719 So.2d 1048.
The testimony of a sexual assault victim alone is sufficient to convict a defendant. State v. Ponsell, supra; State v. Doby, 540 So.2d 1008 (La.App. 2d Cir. 1989), writ denied, 544 So.2d 398 (La. 1989). Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, supra. See also State v. Johnson, XXXX-XXXX (La.App. 4th Cir.8/20/97), 706 So.2d 468, writ denied, XXXX-XXXX (La.7/2/98), 724 So.2d 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999). The date of the offense is not a specific element of the offense of aggravated incest. State v. Foshee, XXXX-XXXX (La.App. 3d Cir.4/5/00), 756 So.2d 693.
It is undisputed that the victim is the natural child of the defendant and was known by the defendant to be under the age of 18 years at the time of the offense. La. R.S. 14:78.1(A). The defendant only argues that the evidence was insufficient to prove that he committed any of the prohibited acts set forth in La. R.S. 14:78.1. However, a review of the record reveals that the evidence presented at trial, when viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that all of the elements of the offense were proved beyond a reasonable doubt, including the element that it was the defendant who committed the prohibited acts. Jackson v. Virginia, supra.
The victim's mother testified that while she was in the hospital having her second baby in early February 1999, the defendant brought the victim, their three-year-old natural daughter, to the hospital to see her. Tammy related that the defendant appeared drunk, and the victim "screamed and hollered" to stay with Tammy. One of the doctors called the police because the defendant raised the newborn baby in the air. Tammy said that a police officer asked the hospital if the victim could stay with Tammy, but was told that it was against hospital policy. Tammy was released from the hospital early.
*1213 While Tammy was in the hospital, she telephoned her sister, Mandy Mohammad, to check on the victim. Tammy was concerned because she could not get the defendant to answer the phone. Mohammad testified that she walked over to the Guerra house, which was located just behind her own house. The defendant came to the doorway holding the victim on his shoulders, who was "screaming and hollering" for Mohammad to take her. Mohammad told the defendant that Tammy sent her to check on the victim, but the defendant would not let the victim leave with Mohammad. Mohammad left the Guerra house and called her mother and Tammy. Later that month or the next, the victim was taking a bath at Mohammad's house and complained of pain. Mohammad had the victim lay on the bed and noticed she was red and swollen. Mohammad admitted on cross-examination that she suspected that the inflammation was from a urinary tract infection for which the victim had recently been treated. She told Tammy about the victim's pain, redness and swelling, but could not remember exactly when the conversation took place. Mohammad also reiterated that while the defendant lived with Tammy and the victim, the defendant never allowed the victim to visit at Mohammad's house.
Tammy also testified that after the defendant was in jail on an unrelated charge, the victim told her several times that her "behind" hurt. Tammy suspected a kidney infection because the victim had suffered from one before. Later, after another complaint by the victim, Tammy asked her if anyone touched her there, and she said that her Daddy had. Tammy then called the police. Tammy also testified that the victim was not allowed to watch television or movies depicting sexual behavior, and mostly watches cartoons. She related that the victim was not allowed to spend the night away from home (except at the home of Tammy's sister).
The victim, who was then five years old, testified at trial. She answered questions regarding her age, where she went to school and her parents' names. The victim stated that she remembered making a movie with a lady. When asked if anyone touched her "booty," she said, "Uh-huh. (Responding affirmatively) Yeah. Did Joe?" Then, when asked again if anyone touched her booty, the victim said, "Huh-uh (responding negatively)." The defense cross-examined the victim.
The state also introduced into evidence the videotaped interview at Gingerbread House as well as the taped interview with the defendant's brother-in-law.
The defendant testified on his own behalf. He denied ever molesting the victim in any way. The defendant stated that when Tammy was in the hospital, the victim was still in diapers and he would change her diaper. The defendant described the hygienic process for the court. He also stated that he did not remember ever telling Garcia that he got aroused every time he saw a female's vaginal area. The defendant stated that he had been incarcerated since April 5, 1999 for a charge of cruelty to the infirm. The defendant basically called all the state's witnesses liars, and said the victim didn't know what she was talking about.
The state presented direct evidence in the form of witnesses' testimony that the victim was in the sole care of the defendant during the mother's hospitalization in early February, and that the victim screamed and pleaded with both her mother and aunt to escape his care during this time. Although the young victim's trial testimony was not conclusive, the record contains evidence in the form of the videotaped forensic interview of the victim in which she said, unequivocally, that the defendant, *1214 her daddy, hurt her by putting two fingers in her "butt."
Dr. Springer, a medical expert in the field of child abuse, testified that she examined the victim on June 3, 1999 with the use of a colposcope. The vaginal exam did not reveal any injuries to the hymen, nor did it reveal any abnormalities or lacerations of the vagina. However, the rectal examination of the victim documented stellate fissuring. The fissures were not freshly bleeding, so Dr. Springer did not think they were hours or days old, but they were quite deep and unhealed.
Dr. Springer opined, "For the anus to show this kind of damage, there usually needs to be multiple episodes and the penetration needs to be forceful and violent." Dr. Springer further opined that this type of damage was not caused by a large bowel movement, but by "something that forcefully penetrates through the anal opening, it's too big to fit, so it damages the opening with the injury." Photographs taken during the examination, which documented Dr. Springer's findings, were introduced into evidence.
On cross-examination, Dr. Springer speculated that the wounds were possibly several weeks old. Dr. Springer elaborated that the wounds might have been three weeks old, but said they might have been much older, explaining that there is no way to give exact data. These anal injuries were unhealed, and, although the time of the injuries could not be medically pinpointed, the date of the offense is not a specific element of the offense of aggravated incest. State v. Foshee, supra.
Furthermore, the victim's videotaped statement was corroborated by the mother's testimony. Finally, the state introduced a plethora of direct evidence, including the testimony of the investigating officer, that the victim was performing an excessive amount of self-fondling and exhibiting ageinappropriate sexual behavior with her dolls during the time period immediately following the time spent in the father's sole carecircumstances from which it could be inferred that the victim learned such behavior from the defendant. Thus, the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant committed a sexual battery upon the victim, and was therefore guilty of every essential element of the crime of aggravated incest. La. R.S. 14:78.1 and La. R.S. 14:43.1; State v. Sutton, supra; State v. Ponsell, supra.
This assignment is therefore without merit.

VIDEOTAPED INTERVIEW
The defendant asserts that the trial court erred in admitting the videotaped statement of the victim because the strict requirements of La. R.S. 15:440.1, et seq., were not met. Specifically, the defendant cites La. R.S. 15:440.5, and complains that some suggestive and leading questions were posed by the interviewer. The defendant further argues that the victim was basically "unavailable" at trial because her answers were "virtually nonexistent." He claims that the victim's refusal to testify denied him his right of confrontation.[1]
The state argues that the trial court did not err in admitting the videotaped interview of the victim into evidence. The state *1215 urges that it presented evidence that the videotaped interview was reliable and the process was competent. It notes that the victim was available to testify at trial, but neither the state nor the defense chose to question the victim at any length, or to probe into the elements of the crime. The state points out that the defense cannot have it both waysit cannot argue that the victim testified that nobody touched her behind, and then argue that the victim was "unavailable" to testify at trial. The state concludes that the defendant's confrontation rights were not violated by the admission of out-of-court interviews when both the victim and the interviewing officer testified at trial and were subject to cross-examination, citing State v. Abbott, 29,497 (La.App.2d Cir.6/18/97), 697 So.2d 636, writ denied, XXXX-XXXX (La.1/9/98), 705 So.2d 1097.
La. R.S. 15:440.2A provides in part:
(1) A court with original criminal jurisdiction or juvenile jurisdiction may, on its own motion or on motion of the district attorney, a parish welfare unit or agency, or the Department of Social Services, require that a statement of a child under fourteen who has been physically or sexually abused be recorded on videotape.
....
(3) Such a videotape shall be available for introduction as evidence in a juvenile proceeding or adult criminal proceeding.
La. R.S. 15:440.3 provides that the videotape authorized by this subpart is hereby admissible in evidence as an exception to the hearsay rule. La. R.S. 15:440.4A provides:
A videotape of a child fourteen years of age or under may be offered in evidence either for or against a defendant charged with the rape or physical or sexual abuse of a child. To render such a videotape competent evidence, it must be satisfactorily proved:

(1) That such electronic recording was voluntarily made by the victim of the physical or sexual abuse.
(2) That no relative of the victim of the physical or sexual abuse was present in the room where the recording was made.
(3) That such recording was not made of answers to interrogatories calculated to lead the child to make any particular statement.
(4) That the recording is accurate, has not been altered, and reflects what the witness or victim said.
(5) That the taking of the child's statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, a licensed professional counselor, or an authorized representative of the Department of Social Services. (Emphasis added.)
La. R.S. 15:440.5 provides in part:
A. The videotape of an oral statement of the child made before the proceeding begins may be admissible into evidence if:

(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;

*1216 (7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
(8) The child is available to testify.
B. The admission into evidence of the videotape of a child as authorized herein shall not preclude the prosecution from calling the child as a witness or taking the child's testimony outside of the courtroom as authorized in R.S. 15:283. Nothing in this Section shall be construed to prohibit the defendant's right of confrontation. (Emphasis added.)
In State in Interest of R.C. Jr., 514 So.2d 759 (La.App. 2d Cir.1987), writ denied, 516 So.2d 128 (La.1987), this court upheld the trial court's decision that the videotape of the victim was inadmissible when the victim was present for trial but refused to testify about the offense. Our court found the statute was not met when the defendant could not effectively cross-examine the victim.
With regard to leading questions, the court in State v. Feazell, 486 So.2d 327 (La.App. 3d Cir.1986), writ denied, 491 So.2d 20 (La.1986), considered the issue of competency of a videotape of a child victim in which some leading questions had been asked (under La. R.S. 15:440.4 dealing with competent evidence). There the court found:
Leading questions are ordinarily prohibited when propounded to one's own witness unless such witness is unwilling or hostile. LSA-R.S. 15:277. However, it is well settled that an exception is usually made when questioning a young child. State v. Kelly, 456 So.2d 642 (La.App. 2nd Cir.1984), writ denied, 461 So.2d 312 (La.1984); State v. Kahey, 436 So.2d 475 (La.1983); State v. Bolton, 408 So.2d 250 (La.1981); State v. Francis, 337 So.2d 487 (La.1976). Furthermore, notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court and in the absence of palpable abuse of that discretion resulting in prejudice to the accused, a finding of reversible error is not warranted. State v. Kelly, supra; State v. Francis, supra.

The court in Feazell found that the leading nature of the questions constituted harmless error "especially since the defense viewed the videotape prior to trial and cross-examined the child during trial." State v. Isaac, 544 So.2d 531 (La.App. 5th Cir.1989). In State v. Isaac, supra, the court agreed with the analysis of the third circuit and extended that reasoning to include the issue of leading questions under La. R.S. 15:440.5 involving admissibility of such videotapes. Therefore, because the defendant in that case did cross-examine the child and did view the tape prior to trial, it found that to whatever extent the questions of the interviewer were leading, the error was harmless. The court found no abuse of discretion on the part of the trial court in admitting the videotape into evidence. State v. Isaac, supra. See also, State v. Abbott, supra.
A review of the record reveals that the trial court did not err in determining that the victim's videotaped statement was admissible into evidence under La. R.S. 15:440.5. All of the requirements set forth in La. R.S. 15:440.5 were met at trial, including La. R.S. 15:440.5A(4) and (8). Contrary to the defense's assertion, the record shows that the victim was sufficiently available to testify at trial. Although some of the victim's answers were not responsive to the questions, the victim did not refuse to testify, as was the case in State in Interest of R.C. Jr., supra. The defense did have the opportunity to question the victim in the instant case on cross-examination, did in fact question the victim on cross-examination, and chose not to further *1217 pursue answers to questions regarding the charged offense. The defense was sufficiently satisfied with the victim's availability to testify on direct examination to pose the argument that the victim denied that anyone touched her "booty." The state correctly argues that the defense cannot "have it both ways." Although some of the questions asked of the victim by the interviewer were admittedly suggestive and/or leading, the trial court did not abuse its discretion in allowing the introduction of the videotaped interview because the questions were appropriate under the circumstances, considering the tender age of the child, and in the context of the interview. See State v. Feazell, supra. Furthermore, there is no indication in the record that the victim acquiesced to suggestive questions. See State v. Abbott, supra. Finally, the defense viewed the tape prior to trial, and cross-examined the victim. Therefore, if any error was committed in the admission of the videotaped interview, it was harmless. State v. Isaac, supra.
This assignment is therefore without merit.

SENTENCING
The defendant argues the two assignments of error pertaining to his sentence together. He contends that there was insufficient articulation in the record to support the maximum sentence imposed. He asserts that the sentencing factors given by the trial court at the hearing on the motion to reconsider sentence did not justify imposition of the maximum sentence. The defendant contends that the trial court failed to give sufficient consideration to the fact that the defendant is a first felony offender. He notes that maximum sentences are reserved for the most egregious and blameworthy offenders, and claims he does not fit that description. The defendant also contends that the state's plea bargain offer before trial indicates that the state felt that the defendant was not a dangerous man.
The state argues that the record supports the defendant's maximum sentence, considering the heinousness of the crime of aggravated incest, the tender age of the victim and the defendant's abuse of his position of authority as the victim's father to facilitate the crime. It notes the devastating effect of this crime upon the youthful victim. The state observes that this offense was not the defendant's first brush with the law because he was in jail on other charges when arrested for the instant offense.
La. R.S. 14:78.1 sets forth the punishment for aggravated incest. It provides in pertinent part:
D. A person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both.
E. (1) In addition to any sentence imposed under Subsection D, the court shall, after determining the financial resources and future ability of the offender to pay, require the offender, if able, to pay the victim's reasonable costs of counseling that result from the offense.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual *1218 basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
The jurisprudence holds that a maximum sentence is appropriate for an offender who sexually abuses his minor child or stepchild. State v. Downs, 30,348 (La.App.2d Cir.1/21/98), 705 So.2d 1277.
The record adequately indicates the trial court was aware of important elements which should be considered prior to imposing sentence, i.e., the victim's tender age at the time of the offense (three), the abuse of the defendant's position of authority as a parent in perpetrating this heinous crime, the apparent intimidation exerted by the defendant upon the victim and his lack of remorse. The defendant's age (46), marital status (was married for over 20 years to Tammy), family history (two natural daughters of that marriage) and past criminal activity (arrested for the instant offense while jailed on another charge plus he was arrested 37 times) are also evidenced. Thus, the record clearly shows an adequate factual basis for the sentence imposed. See State v. Lanclos, supra.
Furthermore, the record shows that the defendant's maximum sentence of 20 years at hard labor for his conviction of aggravated incest upon his natural three-year-old daughter was appropriate in this case. State v. Downs, supra. Considering the circumstances of the case and the background of the defendant, the sentence is not grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra; State v. Bonanno, supra. That is, when this crime and the punishment imposed *1219 are viewed in light of the harm done to society, the defendant's sentence cannot be said to shock the sense of justice. State v. Hogan, supra; State v. Bradford, supra.
This assignment is therefore without merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent from the ruling of the majority.
This is a most difficult case where the state's circumstantial evidence and the testimony of a three-year-old show that the defendant may have committed the crime, yet does not establish, from my review of the record, proof beyond a reasonable doubt. With the two troublesome choices of freeing a possible perpetrator or convicting an innocent defendant, our system of justice requires me to protect the possibly innocent person until the higher proof, beyond a reasonable doubt, is shown.
The timeline of the state's case is crucial. Nevertheless, as with the prosecution of the case, the majority opinion slurs over the timing of the critical events. First, early February was the time when Tammy Guerra was hospitalized for the birth of the second child. Tammy insists that the sexual abuse of her daughter, SG, must have occurred while SG was in the defendant's care in February. Second, the defendant was jailed in early April for an unrelated crime. Third, seven weeks after the defendant's incarceration, on May 26, SG first complained to her mother of the injuries to her rectum. Finally, on June 3, four months after Tammy's hospitalization and eight weeks after the defendant's incarceration, Dr. Springer identified SG's anal injuries which were not yet healed.
One piece of evidence, revealed by Tammy and her sister, Mandy Mohammad, concerned a urinary tract infection which SG contracted at some time between February and early April. Mohammad testified that she examined SG following the child's complaints during a bath. Mohammad saw nothing wrong with the child and attributed SG's complaint to the urinary tract infection, since "she just got treated for that." This bathtub incident could have occurred in late March, immediately before the incarceration. Mohammad did not specifically identify the date other than saying that the incident occurred after Tammy's return from the hospital and before the defendant went to jail. Tammy's testimony indicated the "kidney infection" episode may have occurred in early April, "the week before he got locked up." Most significant, this testimony reveals a medical examination of SG following Tammy's hospitalization. Such examination, like Dr. Springer's, did not determine evidence of vaginal injury or rape and did not report the anal injuries which Dr. Springer later discovered.
Tammy's accusation, therefore, that the crime against the child occurred in early February when SG was in the defendant's custody is undermined by this revelation of a medical examination and by Mohammad's examination of SG, revealing no anal injuries in late February or March. Tammy's insistence that the crime occurred during her hospitalization raises the inference that the defendant had no opportunity thereafter for the child's abuse. The record does not reveal the spouses' pattern of living together in February and March, nor whether the defendant was employed. Tammy's testimony strongly indicates that *1220 upon her return from the hospital she alone took care of both children, leaving little opportunity for the defendant's alleged abuse.
Dr. Springer described SG's injuries as abnormal, non-symmetrical folds in the tissue to the opening of the rectum. She testified that there was no bleeding during her examination, so the injuries did not appear to have occurred in recent hours or days. Yet, she stated that the injuries were not healed, and when asked on cross-examination whether the injuries were three weeks old, Dr. Springer could not state when the injuries most likely occurred. We must consider with this medical testimony the following facts. SG's first and only complaint of rectal pain was May 26. SG apparently needed bathroom assistance and may have been in diapers before May 26 and Tammy did not observe any bleeding or unhealed injury at the anal opening nor cause the child harm when attending to her. Linking this evidence of injury circumstantially to the defendant is very difficult considering his incarceration seven to eight weeks earlier. Moreover, discovery of the physical evidence of sexual abuse in late May contradicts Tammy's view that the defendant sexually abused the child four months earlier while Tammy was hospitalized.
Finally, concerning the seven weeks preceding SG's report of the injury when the defendant was in jail, the state presented no testimony regarding the activities of Tammy and of her children's lives. Was she employed? Was she constantly with both children for the entire length of time? In the absence of any proof by the state, it is not reasonable to infer that no other person came into contact with SG and could have committed this crime closer in time to the discovery of the injuries.
Considering all of the above circumstantial evidence which creates implications regarding when the sexual abuse occurred, I cannot infer or conclude beyond a reasonable doubt that SG's injuries occurred over seven weeks prior to her initial report of pain to her mother when the defendant was not in jail. A reasonable hypothesis that was not excluded by this portion of the state's evidence is that the injuries occurred much closer to May 26 and after April 5 when the defendant was in jail.
With this weakness in evidence for the timing for SG's injuries, the majority confirms the conviction upon what it describes as the "unequivocal" statements of the child. SG was approximately three years and four months old in May and early June when she made her statements to her mother and on videotape to the child therapist. At trial, when SG was five, she did not give testimony implicating the defendant when asked questions by the prosecution in the courtroom.
With respect to SG's statements, I disagree with the majority's reliance in this case upon the cited rule that the testimony of one witness/victim may be sufficient for a conviction. While that principle is well recognized with respect to a fully competent witness, this is a three-year-old witness. SG's statements, which were presented into evidence unopposed as hearsay statements made to her mother and by SG's videotape, did not relate the specific details of the acts of sexual abuse because of her incapacity to understand or explain such acts. Additionally, the statements were made at least seven weeks after the defendant could have committed the crime. Any capacity to retain and recall the specific details of events, which is questionable for a three-year-old, would erode over time. Thus, like circumstantial evidence, competing inferences may be drawn from SG's statements that the defendant "touched" her genital area and/or her "butt" with his fingers. A caretaker of a *1221 child who is in diapers may touch a child's genital area and rectum causing some pain by cleaning the child. When the child is too young to explain the difference between that act and a sexually abusive criminal act, the trier-of-fact may only infer whether the criminal act or the non-criminal act occurred. From my review of the videotape and SG's statements, the understandable lack of clarity and specificity in her statements prevents her testimony from being considered as that of a fully competent witness who identifies facts which clearly amount to a criminal act and whose sole testimony may meet the constitutional sufficiency standard for proof of the crime.
SG's statements to her mother and the police were hearsay. The videotape made pursuant to La. R.S. 15:440.1, et seq., is hearsay which may be admitted as an exception to the hearsay rule upon a showing of its competency. La. R.S. 15:440.3 and 440.4. Addressing the use of hearsay evidence in a criminal proceeding, the United States Supreme Court has stated:
[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability". Reliability can be inferred without more in a case where evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.
Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). See also, Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (where the court rejected evidence of out-of-court statements of a two-year-old as unreliable for purposes of a Confrontation Clause challenge). Despite the fact that defense counsel made or preserved no objections to the admissibility of these hearsay statements, the competency and trustworthy requirements which apply to the testimony of children and admissible hearsay, respectively, must be considered in determining whether this three-year-old's statements can be relied upon as sufficient evidence for the conviction.
Under the special statutory law for the testimony of child victims and the jurisprudence, the competency and trustworthiness of child testimony must always be measured, whether the evidence comes directly from the child at trial, through a videotape pursuant to the statute, or through hearsay statements which the child relates to an adult as an initial revelation of the crime. The competency of a person to be a witness is a question of law to be determined preliminarily by the trial court. La. C.E. art. 104(A); State v. Stewart, 26,168 (La.App.2d Cir.8/17/94), 641 So.2d 1086, writ denied, 94-2363 (La.1/13/95), 648 So.2d 1337. The trial court must insure that a child witness at trial understands the meaning and importance of telling the truth. State v. Dykes, 440 So.2d 88 (La. 1983). Regarding videotaped evidence from a child victim, the statutory provisions for competency, as distinguished from admissibility, guard against leading questions and undue influence by relatives of the victim. La. R.S. 15:440.4(A)(2) and (3). Regarding the admissibility of hearsay of a child's report to an adult, such statements may be admissible in prosecutions for sex offenses when the original complaint of a young child occurs under circumstances indicating that it was a product of the shocking episode and not a fabrication. State v. Noble, 342 So.2d 170 (La.1977); State v. Stamm, 569 So.2d 85 (La.App. 4th Cir.1990) and cases cited therein. All of these indicia for competency *1222 and trustworthiness are lacking in this case.
Certainly, around the age of three and less, a child's ability to remember and to relate factual circumstances is inherently untrustworthy so that competency in the child's testimony will generally be found lacking. This was essentially the ruling in Dykes, supra, where our highest court, after reviewing state and national jurisprudence, determined that the testimony of a three-year-old child was insufficient for conviction under Jackson v. Virginia. With facts somewhat similar to this case, the evidence of the timing and cause of the child abuse was in question, and the only other evidence linking the defendant to the injury was the child's testimony at trial when he was three years and ten months old. The child's statement concerning the defendant's actions, unlike the present case, was clear and unambiguous and did describe a criminal act. Nevertheless, our supreme court found that the transcript did not show that the child understood the meaning and importance of telling the truth. The testimony was influenced by a relative and the prosecutor, causing the court to say:
"Very young children `repeat with phonographic precision the things that have been told them to say, be they true or false. Neither reason nor authority justifies the admission of such witnesses....'"
Dykes, supra. at 92-93, citation omitted.
In this case, SG was never asked in the videotape (at age three years, four months) whether she understood right from wrong and about the importance of telling the truth. As would be expected, SG's overall testimony in the video reveals an inability to focus on the questioning and to form intelligent responses so as to exhibit a sense of responsibility for her answers. Also significant is whether an undue influence may have prompted SG's response. When her father, the defendant, was first mentioned in the interview, she immediately responded that "mama put him in jail." Bearing in mind that the defendant was in jail because of his cruelty to an unidentified, infirmed person, SG nevertheless had gathered that Tammy wanted the defendant in jail. Next, in violation of the prohibition against leading or suggestive questions under La. R.S. 15:440.4(A)(3), the first two questions to SG about her father, before she reluctantly would give any answer, illustrate, as follows: "Has Dad done something bad to you? (No answer.) Where does Dad touch you on your body? (No answer.)" That questioning and the numerous other leading questions throughout the videotape go directly to the issue of the trustworthiness and sufficiency of the evidence. Finally, with regard to Tammy's and the police officer's testimony of SG's hearsay statements of May 26, the conditions for the res gestae exception to the hearsay rule discussed in Noble and Stamm were not present since the shocking episode to the child would have to have occurred over seven weeks before that time. Also, SG did not volunteer the circumstantial information relating to the defendant's conduct; SG was prompted to make her statements by questions on May 26 from Tammy.
In conclusion, as our supreme court points out in Dykes, in no Louisiana case, nor in the numerous cases cited by the court from around the nation, has the testimony of a child, three years and four months old, been held sufficient to sustain a conviction. The majority's ruling in this case admittedly rests upon out-of-court statements by such a young child. Unlike the three-year-old's testimony in Dykes which clearly described in detail a criminal act by the accused, but which, nevertheless, was ruled untrustworthy, *1223 SG's statements in this case provide only circumstantial evidence because of her incapacity to fully describe the act that occurred. From the circumstances of her description of the act, we can only infer that it was a criminal act while we can also infer that it was not. This creates reasonable doubt, by failing to exclude every reasonable hypothesis of innocence. Constrained by the rationale in Dykes concerning child witnesses, I cannot find sufficient evidence for conviction and respectfully dissent.
NOTES
[1] There was an issue about whether a contemporaneous objection was made to the introduction of the videotape, although defense counsel had previously objected to it. Because it was somewhat confusing as to whether the objection was waived, we will consider this assignment of error.